**NEW HAMPSHIRE INSURANCE COMPANY, Appellant,**

v.

**The BANK OF the SOUTHWEST, Appellee.**

No. 9006.

Court of Civil Appeals of Texas, Amarillo.

July 11, 1979.

Rehearing Denied Aug. 1, 1979.

Law Offices of Walter P. Wolfram, Catherine E. Brown, Amarillo, for appellant.

Lumpkin, Watson, Barras & Reavis, Don H. Reavis and Richard L. Hanna, Amarillo, for appellee.

COUNTISS, Justice.

New Hampshire Insurance Company appeals a judgment denying it recovery as subrogee of Imperial Savings Association of Amarillo, the drawer of a subsequently altered check drawn on Imperial's checking account at the First National Bank of Amarillo, Texas, and cashed by the Bank of the Southwest. We affirm the judgment of the trial court.

In June and July of 1976, two employees of Imperial, in cooperation with other persons not Imperial employees, appropriated a substantial sum of Imperial's money by altering and forging checks on Imperial's checking account. One of those altered checks is the subject of this case.

On July 14, 1976, Brenda K. Robison, one of the non-employees involved in the scheme and a depositor at the Bank of the Southwest presented an Imperial check drawn on the First National Bank of Amarillo, dated July 7, 1976, payable to B. K. Robison in the sum of $4,623.75, to a teller at the Bank of the Southwest and asked for cash. The teller, observing that typewriter correction fluid had been used on the check and the payee's name typed over the correction fluid, took the check to one of the bank officers before cashing it. After a conversation with the officer, the teller called Imperial's office to verify the check and, at Robison's direction, asked for "Cathy" or "Jan."[1] The teller spoke with "Cathy" who advised her that the check did belong to B. K. Robison. Thereafter, the check was cashed and the cash given to B. K. Robison.

The Bank of the Southwest processed the check through the clearing house and it was duly presented to the First National Bank of Amarillo on July 15, 1976. First National Bank of Amarillo paid the check to the Bank of the Southwest with its own funds, then deducted that sum from the checking account of Imperial on the same day.

Subsequently, on July 20, 1976, the scheme was discovered by Imperial and New Hampshire Insurance Company, Imperial's bonding company, was notified. The insurance company eventually paid a substantial portion of Imperial's loss, including this check, and took an assignment from Imperial of any recovery rights Imperial might have. The insurance company recovered part of its loss by settlement with First National Bank of Amarillo and, as a part of the settlement, agreed not to seek recovery from First National Bank of Amarillo on the check in question. However, the insurance company took no assignment of rights in the check from First National Bank of Amarillo. The insurance company then filed this suit against the Bank of the Southwest.

The insurance company attacks the judgment of the trial court on four points of error, contending that the Bank of the Southwest is accountable to the insurance company for the proceeds of the check under section 3.304(a)(1), Tex.Bus. & Com. Code Ann. (Vernon 1968); that the findings of fact and conclusions of law are not sup-

[1]. The Imperial employees involved in the scheme were Jan Moser and Catherine McMillan. Brenda K. Robison was the roommate of Jan Moser. The statement of facts indicates that Robison told the teller to ask for "Cathy" or "Jan" because they had waited on her but the evidence does not further identify "Cathy" and "Jan."

ported by the evidence or are against the great weight and preponderance of the evidence; that the trial court erred in failing to make the findings of fact and conclusions of law requested by the insurance company and that the insurance company is entitled to prejudgment interest. In view of our disposition of the case, only the first point of error will be discussed.

The insurance company's only affirmative theory of recovery in this Court is based on section 3.304(a)(1), Tex.Bus. & Com.Code Ann. (Vernon 1968). As pertinent here, that section reads as follows:

> (a) The purchaser has notice of a claim or defense if
>
> (1) the instrument . . . bears such visible evidence of . . . alteration . . . as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay . . . .

It is the insurance company's position that the Bank of the Southwest was put on notice of a claim or defense as to the subject check because of the alteration visible on the face of the check, that it knew the check was altered before cashing it and that, with this knowledge it obtained money by means of the altered check from the account of Imperial and is liable to the insurance company, Imperial's subrogee, for the money.

■ We are thus presented with the narrow question of whether the insurance company is entitled to recover the amount of the check from the Bank of the Southwest solely because the Bank may have had notice of the alteration of the check. We answer that question in the negative.

■ The defect in the insurance company's position is that section 3.304(a)(1) does not, standing alone, establish a substantive cause of action. By its terms, the

section is a "notice" section and the sub-section in question is the starting point for determining the posture that will be occupied by the purchaser of an altered instrument in the event of a dispute concerning the instrument. See White & Summers, Uniform Commercial Code, § 14–6 (1972). If the purchaser comes within its provisions, it will be denied the favored status of a holder in due course.[2] However, an initial determination that the purchaser is charged with notice of a claim or defense, and thus not a holder in due course, does not automatically resolve the question of liability. If a claim is being asserted on an instrument against a holder, the entity asserting the claim must, after establishing the "holder" status, factually and legally establish a recognized cause of action against that holder. Of course, denial of holder in due course status makes the holder much more vulnerable when a recognized cause of action is asserted against it, but it does not give the claimant a blank check signed by the holder. Compare sections 3.305 and 3.306, Tex.Bus. & Com.Code Ann. (Vernon 1968).

■ In the posture of the case now before us, it is immaterial whether the Bank of the Southwest is a holder or a holder in due course because the insurance company does not assign by point of error or present any theory in this court that would justify recovery against the Bank of the Southwest in either capacity. Absent an assignment of error bringing forward a recognized theory of recovery, this court can grant no relief to the insurance company. State Farm Mutual Automobile Ins. Co. v. Cowley, 468 S.W.2d 353, 354 (Tex.1971).

In similar cases, various theories have been asserted, with varying degrees of success, under the warranties contained in section 4.207, Tex.Bus. & Com.Code Ann. (Vernon 1968)[3] and under common law theories

---

2. The holder in due course has been referred to as "Superplaintiff." White & Summers, supra, § 14–1.

3. See Central Cadillac, Inc. v. Stern-Haskell, Inc., 356 F.Supp. 1280 (S.D.N.Y.1972); Life Insurance Company of Virginia v. Snyder, 141

N.J.Super. 539, 358 A.2d 859 (1976); Stone & Webster Eng. Corp. v. First National B. & T. Co., 345 Mass. 1, 184 N.E.2d 358 (1962).

preserved by section 1.103, Tex.Bus. & Com. Code Ann. (Vernon 1968).[4] However, the insurance company in its brief expressly disclaims any reliance on section 4.207 and did not plead a common law theory of recovery in the trial court.

In summary, the insurance company has not preserved in this court any theory that gives it a cause of action against the Bank of the Southwest under the undisputed facts of this case. Having made that determination, discussion of the insurance company's remaining points of error is unnecessary.

The judgment of the trial court is affirmed.

**4.** *See United States Fidelity & Guaranty Co. v. First Nat. Bank*, 93 S.W.2d 562 (Tex.Civ.App.— El Paso 1936, writ dism'd by agr.); *Internation-* *al Industries, Inc. v. Island State Bank*, 348 F.Supp. 886 (S.D.Tex.1971).