The FIRST NATIONAL BANK OF AMARILLO, Appellant,

v.

Floyd L. JARNIGAN and Ernestine Jarnigan, Tri–City Land Development and Builders, Inc., and Tom Hess, Appellees.

No. 07–89–0227–CV.

Court of Appeals of Texas, Amarillo.

June 25, 1990.

Rehearing Overruled Aug. 6, 1990.

Ham, Irwin, Graham & Cox, John S. Irwin and Roger S. Cox, Amarillo, for appellant.

Ben Sturgeon, Vernon, Wolfram Law Firm, Walter P. Wolfram, Amarillo, and Milton Walker, Panhandle, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

In sixty-four (64) points, appellant The First National Bank of Amarillo (Bank), asserts the trial court erred in rendering its judgment in favor of appellees Floyd L. Jarnigan and Ernestine Jarnigan (Jarnigans), Tri–City Land Development and Builders, Inc. (Tri–City), and Tom Hess (Hess). In seventeen reply points the Jarnigans argue the trial court, in the main acted correctly, but, in three cross-points suggest areas in which they assert trial court error exists. Hess and Tri–City have also filed a brief replying to the Bank's sixty-second and sixty-third points of error. We reverse and remand.

On March 5, 1983, the Jarnigans and Hess, d/b/a Tri–City Builders, entered into an instrument denominated as a "New Home Residential Earnest Money Contract" in which Hess agreed to construct a residence upon property located in Borger, Texas. Since the Bank had handled interim financing for Hess on seven "pre-sold" houses in the past, Hess approached Robert Lee (Bob) Bass, a senior vice-president of the Bank, about handling the interim financing on the house.

The Bank approved the request, and, pursuant to its instructions, the documents necessary to effectuate the deal were prepared by Leon Mitchell, a Borger attorney. Mr. Mitchell was Tri–City's regular attorney, and the instruments were executed in his office. The instruments were:

1. A Builder's & Mechanic's Lien Contract, with power of sale, dated April 6, 1983, executed by the Jarnigans in favor of Tri–City which provided for the construction of a residence upon property located in Borger.

2. A Builder's & Mechanic's Lien Note dated April 6, 1983, in the principal amount of $90,000, executed by the Jarnigans and payable to the order of Tri–City on or before six months from its date. The note also recites a power of sale on the Borger property.

3. A transfer of lien from Tri–City to the Bank dated April 6, 1983, covering the $90,000 note and the liens securing it.

4. A promissory note in the principal sum of $90,000, dated April 6, 1983, and due on or before six months from its date. The note provides for "interest on the principal outstanding at a variable rate of two per cent (2%) per annum, above the prime rate of interest charged by Continental Illinois National Bank and Trust Company, Chicago, Illinois, to its largest and most creditworthy borrowers on ninety-day unsecured commercial loans." The note also provided that the

interest rate would change on the effective date of changes on the prime rate by the Chicago bank. It also recited that it was secured by a deed of trust in favor of Don Powell, trustee. Although the body of the note recited only the Jarnigans as the obligors, it was also executed by Tri–City.

5. A deed of trust dated April 6, 1983, covering the Borger property, executed by the Jarnigans in favor of Don Powell, as trustee for the Bank. It secures the $90,000 note described immediately above and contains the usual provisions as to non-judicial sale of the property in the event of default. It also recites that the note secured by it is in renewal and extension of the $90,000 mechanic's lien note.

The instruments were prepared in this manner pursuant to instructions from Robert Lee (Bob) Bass. Although the transaction was one in which a federally mandated information document called a Regulation "Z" document was required, one was not given. A "Z" document is one which defines how much the total interest on a loan would be if all of the monies were advanced on the first day of the loan being transacted. It should also state the annual percentage rate of interest on the loan.

On April 27, 1983, the Bank began making loan advances on invoices prepared and submitted by Hess purportedly representing work done on the house. In late August or early September, 1983, the Bank stopped making advances when David Forbess, a credit analyst at the Bank, decided advances made exceeded the work done on the house. The residence was not completed by Tri–City, and the $90,000 deed of trust note, after demand, was not paid by its due date.

The Bank proceeded to a non-judicial foreclosure under its deed of trust. It was the only bidder at the foreclosure sale and purchased the property for $60,000, which was applied upon the balance the Bank asserted was due under the note. The amount of the bid was based upon the Bank's estimate that the residence under construction was 60% complete upon a total construction cost of $90,000. The property was resold by the Bank "as is" for $65,000.

On September 4, 1984, the Bank filed this suit against the Jarnigans, Tri–City, Hess, and Hess' mother, Betty L. Wilson (Wilson), who had signed a guaranty agreement, to collect the $28,142.04 balance it asserted was due upon the note. Wilson paid the Bank $10,000 in settlement of the claim against her, and, on December 30, 1985, she was dismissed from the suit. The $10,000 was applied upon the principal claimed by the Bank to be due.

After exhaustive and voluminous discovery and considerable amendment of pleadings on the part of all parties, at the time of trial, the Bank sought recovery of an alleged deficiency of $9,048.57 plus interest and attorney's fees. The Jarnigans denied liability and, in a cross-action, sought recovery for asserted violations of the Deceptive Trade Practices Act (DTPA), Tex.Bus. & Com.Code Ann. §§ 17.41 et seq. (Vernon 1987 & Vernon Supp.1990); the Debt Collection Act, Tex.Rev.Civ.Stat.Ann. art. 5069, §§ 11.01–11.11 (Vernon 1987); and for breach of the duty of good faith and fair dealing.

Trial of the cause began on January 23, 1989. After presentation of the Bank's case in chief, the trial court granted the Jarnigan's motion for instructed verdict that the Bank take nothing against them on its suit on the promissory note. On January 28, 1989, the trial court submitted to the jury (1) the Bank's claim against Tri–City on the promissory note; (2) the Bank's claim against Hess on a guaranty agreement; (3) the Jarnigan's claims against the Bank under their DTPA, Debt Collection Act, and common law good faith and fair dealing theories; and (4) the Jarnigan's DTPA claim against Tri–City.

Based on the jury's answers, the trial court, on March 10, 1989, entered judgment. However, after a hearing on the Bank's motion for new trial, the trial court, by judgment dated June 26, 1989, granted the Bank a new trial as to its claim for attorney's fees against Tri–City and severed that portion of the suit, modified the prior judgment to delete the joint and sev-

eral liability of the Bank on mental anguish findings of the jury against Tri–City, and awarded the Bank judgment against Tri–City in the amount of $5,082.58, plus interest. It also awarded the Jarnigans judgment against the Bank on their DTPA claim in the sum of $162,881.90, together with additional damages under that Act in the sum of $32,000, awarded the Jarnigans judgment against Tri–City under the DTPA in the amount of $2,000, with additional damages under that Act of $4,500, and awarded the Jarnigans judgment against the Bank and Tri–City, jointly and severally, in the sum of $150,000 for attorney's fees. It is from this modified judgment that the appeal arises. Relevant portions of the evidence will be set out as may be necessary in a discussion of the questions raised in the appeal.

In its first point, the Bank avers that the trial court erred in granting the Jarnigans' motion for instructed verdict because the evidence was not sufficient to establish as a matter of law that the Bank was not entitled to recover anything on the promissory note.

■ In reviewing a case in which a verdict has been directed, an appellate court must view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary inferences. If the appellate court finds there is any evidence of probative value which raises a material fact issue or issues, *i.e.,* when reasonable minds may differ as to the truth of controlling facts, then the judgment must be reversed and the cause remanded for the jury's determination of that issue or issues. *White v. Southwestern Bell Tel. Co., Inc.,* 651 S.W.2d 260, 262 (Tex.1983); *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978).

In supporting the directed verdict, the Jarnigans argue the Bank was not a holder in due course of the renewal note. That being the case, they reason, the note was subject to any defense they might have to the mechanic's lien contract, in particular,

to its "partial lien" provision. If the right to recover and foreclose was limited by that provision, they opine, the Bank must have established the difference in the contract price and the cost of completing the improvements. Having failed to do so, no ascertainable amount of money was due the Bank, and, if no ascertainable amount of money was due, the Bank was not entitled to recover under its note and lien. Under those circumstances, then, they reason, the trial court acted correctly in granting the instructed verdict.

The Texas Business and Commerce Code defines a "holder" as "a person who is in possession of a document of title or an instrument or a certificated investment security drawn, issued, or endorsed to him or to his order or to bearer or in blank." Tex.Bus. & Com.Code Ann. § 1.201(20) (Vernon Supp.1990). A "holder in due course," as relevant here, is defined as a holder who takes the instrument "without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." Tex.Bus. & Com.Code Ann. § 3.302(a)(3) (Vernon 1968). Section 3.305 of the Code[1], in relevant part, provides that to the extent that a holder is a holder in due course, he takes the instrument free from all defenses of any party to the instrument with whom the holder has not dealt. A payee may be a holder in due course. Tex.Bus. & Com. Code Ann. § 3.302 (Vernon 1968).

It is the Jarnigans' position that the Bank is not a holder in due course of the original mechanic's and materialman's lien contract and note because it did not contain an unconditional promise or order to pay a sum certain in money within the purview of § 3.104. It is not a holder in due course of the renewal note, they say, (1) because the renewal note violates Federal Regulation Z, and, (2) by requiring the preparation and execution of the instruments in the prescribed manner, in order to obtain its loan, the Bank "dealt" with the Jarnigans within the purview of § 3.305 of the Code.

---

1. Future references to "the Code" or to section numbers will be to the Texas Business and Com-

merce Code Annotated (Vernon 1968).

In asserting the trial court erred, the Bank mounts a two pronged attack. In one prong it argues there is sufficient probative evidence to raise a fact issue on the holder in due course status of the Bank. In the other, it contends that the status of the bank as a holder in due course is immaterial because the Jarnigans have not presented a defense that would completely defeat the right of the Bank to recover as a holder.

■ In its case-in-chief, the Bank identified the renewal note and produced testimony that it, in good faith, paid value for the note and, at the time of taking, was not aware of any defenses to it. *See Williams v. Stansbury,* 649 S.W.2d 293, 295 (Tex. 1983). The general rule is that the question whether a party is a holder in due course is for the jury. *Fortner v. Johnson,* 404 S.W.2d 892, 903 (Tex.Civ.App.– Fort Worth 1966, writ ref'd n.r.e.).

■ The Bank does not dispute that, under the Federal Truth in Lending Act, 15 U.S.C.S. § 1601 et seq. (Law. Co-op 1982 & Supp.1990), and the Truth in Lending Simplification and Reform Act, P.L. 96–221 (1980), the transaction with the Jarnigans was subject to Regulation Z, promulgated by the Federal Reserve Board pursuant to the above Acts. The purpose of Regulation Z is to promote the informed use of consumer credit by requiring disclosure about the terms and costs of a credit transaction within its purview. The statute provides that an action to recover for a failure to comply with Regulation Z may be brought within one year and, even after the one year period, in case of an action to collect on the debt, the violation may be asserted as a matter of defense by recoupment or set-off in the action. Thus, the Bank's admitted violation of Regulation Z, occurring on April 6, 1983, the date of the renewal note, charged it with notice of a "defense" to the note in this action, pursuant to § 3.302. This notice deprives the Bank of the benefit of being a holder in due course.

That decision does not end our search. As the payee of the renewal note, the Bank is clearly a "holder" within the purview of

§ 1.201(20). The determination that the Bank is not a holder in due course and charged with notice of a claim or defense does not automatically resolve the question of liability on the note. *See New Hampshire Ins. Co. v. Bank of Southwest,* 584 S.W.2d 560, 562 (Tex.Civ.App.—Amarillo 1979, no writ). Section 3.413(a) provides in relevant part that "[t]he maker ... engages that he will pay the instrument according to its tenor at the time of his engagement...." The rights of a holder not in due course are subject to the defenses specified in § 3.306 and include "all defenses of any party which would be available in an action on a simple contract...."

The Jarnigans contend that all of the loan documentation constitutes a single transaction for the purposes of ascertaining the defenses of a simple contract, and all of the documents should be construed together. If the terms of the mechanic's and materialman's lien contract appear to conflict with the terms of the renewal note and deed of trust, they suggest that, under the circumstances of their execution pursuant to the instructions of the Bank, the provisions of the renewal note and deed of trust must yield to those of the mechanic's and materialman's lien contract and note. Viewed in that light, they continue, the obligation of the Jarnigans' payment was subject to the provision of the construction contract that it must be substantially performed according to the plans and specifications. Reasoning that the parties seem to stipulate that the contract was not substantially performed since the improvement was only about 55% complete, they opine that, under the contract, the Bank was limited to three methods of recovery.

They argue that the Bank could have (1) asserted a valid lien for the contract price less the reasonable and necessary expenditures to complete the project according to specifications, or, (2) finished the project according to the specifications and asserted a lien for the face amount of the contract price, or (3) sued in quantum meruit for the value of the materials and labor and had a valid lien to enforce it. Bottomed on that premise, the Jarnigans contend that the

Bank did not proffer any evidence of what it claimed its damages were, did not lay a claim in quantum meruit for the value of the labor and materials furnished, did not try to ascertain the difference between the contract price and the cost of completing the property according to the plans and specifications, and did not complete the project. Therefore, they conclude, the Bank was not entitled to any recovery under its evidence and the trial court acted correctly in instructing the verdict.

We disagree with the basic premise of the Jarnigans' argument, that only a single transaction is shown, and application of the appropriate rules of construction mandate that in case of apparent conflicts between the instruments, the renewal note and deed of trust must yield in favor of the original contract and the note securing it. The end result of that reasoning is that the obligation of the Jarnigans to pay the Bank is governed by provisions of the mechanic's and materialman's contract.

In support of their proposition, the Jarnigans place primary reliance upon the Court's decision in *Coker v. Coker*, 650 S.W.2d 391 (Tex.1983). In that case, which involved the construction of a property settlement agreement, the Court articulated the rule that when construing a written contract, the basic objective of the court is to ascertain the true intent of the parties. To achieve that objective, the entire writing must be considered in an effort to give effect to all of its provisions with no single provision given controlling effect and, in harmonizing the provisions of such a contract, terms stated earlier in an agreement must be favored over subsequent terms. *Id.* at 393.

We do not agree with the trial court's evident acceptance of the Jarnigans' argument that, as a matter of law, all of the documents executed constituted a single transaction and its concomitant conclusion that the Bank had failed to establish any right to recover under the contract, thereby justifying the instructed verdict.

■ The general rule in Texas is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction, are to be considered as one instrument to be read and construed together. *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex.1981). However, that rule is subject to the qualification that this will not be done where it is contrary to the intent of the parties, inasmuch as instruments executed contemporaneously may have been intended to be separate instruments and to provide for entirely different things. *McPherson v. Longview United Pentecostal Church*, 540 S.W.2d 424, 432 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.).

■ Both Bass and Mitchell testified that the renewal and extension deed of trust note and the deed of trust securing it, represented a new agreement with the Bank making advancements under it. Bass also pointed out that the mechanic's lien note did not bear interest until its maturity and a renewal note was necessary because "we can't loan money at zero rate." Mitchell testified that the purpose of the renewal papers was to ensure that the lender was not assuming the risk of construction. Suffice it to say, there was testimony at least sufficient to pose a fact question whether it was the intent of the parties that the transaction between the Jarnigans and Tri–City was separate from the agreement between the Jarnigans and the Bank.

We conclude that the trial court erred in granting the instructed verdict that the Bank was not, as a matter of law, entitled to recover anything on its renewal note. The Bank's first point is sustained.

Although our disposition of the Bank's first point requires reversal, we must also discuss the Bank's third through fifteenth points because the question will likely reoccur upon retrial. In those points, the Bank challenges the inclusion of thirteen "adjudicative facts" in the court's charge.

The jury was instructed as follows:

The Court has taken judicial notice of certain adjudicative facts and you must accept such judicially noticed facts as conclusive. They are as follows:

1. That the Jarnigans were consumers within the meaning of the Debt

Collection Act of the State of Texas, Article 5069–11.01 et seq in relation to the First National Bank of Amarillo.

2. The First National Bank of Amarillo was a debt collector in relation to the Jarnigans within the meaning of the Debt Collection Act of the State of Texas.

3. The transaction between the Jarnigans, Tri–City Land Development & Builders, Inc. and the First National Bank of Amarillo was for personal, family or household use of the Jarnigans.

4. That the Jarnigans were "consumers" within the meaning of the DTPA in relation to Tri–City Land Development and Builders, Inc. and the First National Bank of Amarillo.

5. The mechanic's and materialmen's lien contract, original mechanic's and materialmen's lien note and the renewal note and deed of trust constitute a single transaction.

6. The First National Bank of Amarillo dealt with the Jarnigans in securing their execution and delivery of the renewal note and deed of trust.

7. The First National Bank of Amarillo is not a holder in due course of the renewal note and deed of trust dated April 6, 1983.

8. The provisions authorizing a foreclosure under private power of sale contained in the builder's and mechanic's lien contract were conditioned upon a default of payment by the Jarnigans.

9. The provisions authorizing a foreclosure under private power of sale contained in the renewal note and deed of trust were conditioned upon a default in payment by the Jarnigans.

10. The contractor, Tri–City Land Development and Builders, Inc., did not substantially perform its contract with the Jarnigans in the construction of the improvements required in the builder's and mechanic's lien contract dated April 6, 1983.

11. The original contractor's and materialmen's lien note provides interest to be computed on a 365 day year basis.

12. The renewal note provides interest to be computed on a 365 day year basis.

13. The First National Bank of Amarillo's policy of charging a per diem rate of interest based on a 360 day year cannot be characterized as an accident or bona fide error.

Texas Rule of Civil Evidence 201[2] governing judicial notice of adjudicative facts, reads as follows:

(a) **Scope of Rule.** This rule governs only judicial notice of adjudicative facts.

(b) **Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) **When Discretionary.** A court may take judicial notice, whether requested or not.

(d) **When Mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e) **Opportunity to Be Heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(f) **Time of Taking Notice.** Judicial notice may be taken at any stage of the proceeding.

(g) **Instructing Jury.** The court shall instruct the jury to accept as conclusive any fact judicially noticed.

In defending the court's instruction on these adjudicative facts, the Jarnigans theorize that the recited facts were of the type within the purview of Rule 201(b)(2), *i.e.*, capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. They

**2.** Future references to Rule 201 will be to the Texas Rules of Civil Evidence.

suggest that those matters are without dispute in the facts and "can be readily ascertained merely by consideration of all the evidence before all of the parties or which might under any circumstances be gathered by all of the parties...." Therefore, they reason, the requisite notice having been given to the other parties, and the court having taken judicial notice of the requested facts, by virtue of Rule 201(g), it was the court's mandatory duty to instruct the jury on those facts.

Texas Rule 201, as well as Federal Rule of Evidence 201, upon which it is based, is expressly limited to adjudicative facts. It has been suggested that adjudicative facts are those facts concerning the immediate parties, who did what, where, when, how, and with what motive or intent. *See* Fed. R.Evid. 201(a) (Advisory Committee's Note). We adopt that definition.

As relevant to this case, Rule 201(b) requires that an adjudicative fact, to be judicially noticed, must not be subject to reasonable dispute. It must be capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. In *Harper v. Killion*, 345 S.W.2d 309, 311 (Tex.Civ.App.—Texarkana), *aff'd*, 162 Tex. 481, 348 S.W.2d 521 (1961), the court made the following observation:

> The doctrine of judicial notice is one of common sense. The theory is that, where a fact is well-known by all reasonably intelligent people in the community, or its existence is so easily determinable with certainty from unimpeachable sources, it would not be good sense to require formal proof.

■ In this State, judicial notice has been taken of a wide variety of matters. (For examples see the collation of cases in West's Texas Digest 2d §§ 5(2)–50.) Examination of the cases reveals a common thread requiring that, in order to be judicially noticed, a fact be a matter of common knowledge, verifiable without the necessity of an assessment of the truth and veracity of an interested witness in a particular case. *See Harper v. Killion, supra*. As we have noted above, Rule 201(b)

is an articulation of that requirement. Although the type of most of the facts judicially noticed by the trial court would, at best, be on the outer edge of the type of fact classically the subject of judicial notice, the focus of our discussion must be upon the instruction to the trial jury of the facts judicially noticed by the trial court.

Even assuming, arguendo, the trial court was authorized to take judicial notice of these 13 facts, the provision of Rule 201 relating to the instruction of juries must be considered in the light of established principles governing such instruction. Texas Rule of Civil Procedure 277[3] provides that upon submission, the trial court should submit such instructions and definitions "as shall be proper to enable the jury to render a verdict." In pursuance of that duty, the court is admonished that it "shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers...." *Id.* That admonition is limited only by the provision that an incidental comment is permissible if "it is properly a part of an instruction or definition." *Id.*

In *Rendon v. Texas Emp. Ins. Ass'n.*, 599 S.W.2d 890, 896 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.), this Court held that the only function of an explanatory instruction is to aid and assist the jury in answering the issues submitted by the court. We also cited with approval the holding of the court in *Union Oil Co. v. Richard*, 536 S.W.2d 955, 958 (Tex.Civ.App. —Beaumont 1975, writ ref'd n.r.e.), that anything which does not aid the jury in answering the jury questions submitted, regardless of how interesting or otherwise relevant to the case, must be excluded from the charge. *Rendon v. Texas Emp. Ins. Ass'n.*, 599 S.W.2d at 896.

■ It has long been established in this State that in its charge, the trial court should not comment on the evidence or the weight thereof in any manner nor give direction to the jury in its fact deliberation process. *Bd. of Regents v. Denton Const. Co.*, 652 S.W.2d 588, 595 (Tex.App.—Fort

---

**3.** Future references to Rule 277 will be to the     Texas Rules of Civil Procedure.

Worth 1983, writ ref'd n.r.e.). Rule 277 carries forward that strict prohibition against commenting upon the weight of the evidence with one limited exception. A court may *incidentally* comment where the comment is necessary or proper as a part of an explanatory instruction or definition. While it is not error for the trial court, in charging the jury, to assume an uncontroverted fact, *McDaniel v. Tucker*, 520 S.W.2d 543, 548 (Tex.Civ.App.—Corpus Christi 1975, no writ), any such assumption must be within the limitations set out above.

■ An impermissible comment on the weight of the evidence occurs, when after examining the entire charge, it is determined that the judge assumed the truth of a material controverted fact, or exaggerates, minimizes, or withdraws some pertinent evidence from the jury's consideration. *Lively Exploration v. Valero Transmission*, 751 S.W.2d 649, 653 (Tex.App.—San Antonio 1988, writ denied), *appeal dismissed*, —— U.S. ——, 110 S.Ct. 1104, 107 L.Ed.2d 1013 (1990).

The provision in Rule 201(g) relating to the jury instruction of facts judicially noticed by the court must be considered in the light of the admonition in Rule 277 against direct judicial comment on the weight of the evidence. It must also be construed in the light of the well established principles governing the content and purpose of jury charges which we have discussed above.

■ We conclude therefore, that a jury instruction under Rule 201(g) must not amount to a direct comment on the weight of the evidence nor may such an instruction be of such a nature as to advise the jury of the effect of their answers unless it is properly a part of an instruction or definition. It is in this light that we examine the trial court's recitation of adjudicative facts it had judicially noticed and its instruction that the jury must accept them as conclusively established.

Initially, in its adjudicative fact instruction number five, the trial court instructed the jury that the legal documents in question constituted a single transaction. For the reasons expressed previously, we hold

a fact question existed as to whether that was the case. Therefore, the trial court's instruction that it had been conclusively established that the documents constituted a single transaction was clearly an impermissible comment on the weight of the evidence.

■ Again assuming, arguendo, that the trial court was justified in taking judicial notice of the remainder of its enumerated adjudicated facts, we hold that to instruct the jury as to those facts constituted unnecessary and impermissible comments on the weight of the evidence calculated to prejudice the rights of the Bank in the eyes of the jury. As the Jarnigans acknowledge in their reply brief, those findings do not constitute definitions or instructions. As such, those findings were not designed to be helpful to the jury in answering any of the questions addressed to them in the charge, and, as evidenced by the trial court's failure to title them as instructions, they were not instructive to the jury in answering any of such questions. That being the case, we conclude that the recitation of the findings tended to suggest to the jury that the trial judge thought the law and the facts were in favor of the Jarnigans and that they should be compensated accordingly. Our examination of the record convinces us that the instruction as to the findings was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. As such, a reversal is required. Tex.R.App.P. 81(b).

Our conviction that the trial court's action requires reversal is strengthened by the recent decision in *American Bankers Ins. Co. v. Caruth*, 786 S.W.2d 427 (Tex. App.—Dallas 1990, no writ). In that case, the court was presented with a set of trial court findings analogous to those considered here. Albeit without a discussion of the effect of Rule 201(g), in a well reasoned opinion, the Dallas court held that an analogous trial court instruction to a jury of trial court "findings of fact" constituted an impermissible comment on the weight of the evidence requiring reversal of that case. *Id.* at 435. Accordingly, we

sustain the Bank's third through fifteenth points.

Since we have sustained the Bank's first and third through fifteenth points, that action requires us to reverse the judgment of the trial court and remand the cause for new trial. Therefore, the necessity for discussion of the remainder of the Bank's points, as well as of the Jarnigans' cross-points, is obviated. The judgment of the trial court is reversed and the cause remanded for new trial.