**OCCIDENTAL PERMIAN LTD., Appellant,**

v.

**RAILROAD COMMISSION OF TEXAS, Appellee.**

No. 03–00–00504–CV.

Court of Appeals of Texas, Austin.

May 31, 2001.

Rehearing Overruled June 29, 2001.

Rex H. White Jr., Austin, for appellant.

Joe Foy Jr., Assistant Attorney General, Austin, for appellee.

Before Chief Justice ABOUSSIE, Justices YEAKEL and PATTERSON.

YEAKEL, Justice.

Appellant Occidental Permian Ltd. ("Occidental") appeals from the district court's final judgment affirming an order of appellee Railroad Commission of Texas (the "Commission"). The Commission's order

denies Occidental retroactive tax benefits for an expanded enhanced oil recovery project. We will affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Occidental[1] is the operator of the Wasson ODC Unit in the Wasson Field in Yoakum County. The unit is operated as a full-scale carbon dioxide ("$CO_2$") flood, utilizing miscible fluid displacement. The process, a tertiary miscible flood, displaces oil by injecting $CO_2$ into the oil reservoir at pressure levels such that the injected gas and reservoir oil are miscible (capable of being mixed) and was designed to alternate salt water and $CO_2$ injection. As such, the Wasson ODC Unit functioned as an "enhanced oil recovery project." *See* 16 Tex. Admin. Code § 3.50(c)(5), (19)(G) (2001).[2] Enhanced oil recovery techniques are used to recover oil over and above that derived from primary and secondary methods. *See* 2 Ernest E. Smith & Jacqueline Lang Weaver, *Texas Law of Oil & Gas* § 8.2 (1996). When the unit was initiated in 1984, Occidental planned to ultimately inject $CO_2$ volumes equal to fifty percent of the original hydrocarbon pore volume in the reservoir. However, by 1995 its studies indicated that injecting an additional thirty percent of the original hydrocarbon pore volume, for a total of eighty percent, would extend the life of the project by at least ten years. The additional injections would change the character of the project from an "existing enhanced recovery project" to an "expanded enhanced recovery project." *See* 16 Tex. Admin. Code § 3.50(c)(6), (7). The proposed change would require Commission approval. *Id.* § 3.50(c)(7), (g)(1).

■ The Texas Tax Code imposes a production tax on oil. *See* Tex. Tax Code. Ann. § 202.051 (West 1992) & § 202.052(a) (West Supp.2001). However, since 1991[3] oil produced from an expanded enhanced recovery project has been taxed at a significantly lower rate, provided that "before the expansion begins, the [C]ommission approves the expansion and designates the area to be affected by the expansion." *Id.* § 202.054(b) (West Supp.2001); *see also id.* § 202.052(a), (b) (comparing oil production tax rates). The Commission has established a procedure to obtain the favorable tax rate. *See* 16 Tex. Admin. Code § 3.50 (2001).[4] In July 1996 Occidental applied to the Commission for approval to expand the existing enhanced recovery project at the Wasson ODC Unit and the concomitant reduced tax rate on future production. The Commission administratively denied Occidental's request in August. *See id.* § 3.50(g)(2)(C) (application will be processed administratively). Although Occidental could have requested a hearing following the denial of its application, it did not immediately do so. *See id.* ("If the [C]ommission representative de-

---

1. Occidental was formerly Altura Energy Ltd. Altura Energy Ltd. is the successor-in-interest to Amoco Production Company. Many of the actions described in this opinion were taken by, or in the name of, Amoco or Altura. However, for clarity, we will refer to all three entities as "Occidental."

2. Section 3.50 of the administrative code is also known as "Statewide Rule 50." 16 Tex. Admin. Code § 3.50 (2001).

3. *See* Act of May 24, 1991, 72d Leg., R.S., ch. 604, §§ 1–4, 1991 Tex. Gen. Laws 2196, 2196–99 (Tex. Tax Code Ann. §§ 202.052, .054, since amended).

4. "The purpose of this section is to provide a procedure by which an operator can obtain ... Commission approval and certification of enhanced oil recovery ... projects pursuant to the Tax Code, Title 2, Chapter 202, Subchapter B, § 202.052 and § 202.054." 16 Tex. Admin. Code § 3.50(a).

nies administrative approval, the applicant shall have the right to a hearing upon request."). In spite of the lack of Commission approval and without requesting a hearing, Occidental soon began the increased $CO_2$ injections.[5]

Occidental did not request a hearing of the 1996 Commission denial until July 1998. In August a hearing was conducted before two Commission hearings examiners, who, in October recommended that the application be denied. The examiners observed that (1) the application "may well have been approved if [Occidental] had requested a hearing immediately after the administrative denial"; (2) if the application had not been approved and a hearing had been requested in mid-August 1996, Occidental could have obtained a final ruling before beginning the expansion; and (3) Occidental "could have simply made its original application earlier." The examiners noted that section 3.50(g)(1) "clearly requires approval of an application prior to active operations." *See id.* § 3.50(g)(1). The Commission adopted the findings and conclusions of the examiners and denied the application. Occidental's motion for rehearing was unsuccessful. *See* Tex. Gov't Code Ann. § 2001.145 (West 2000). Occidental appealed to the district court, *see id.* § 2001.171, who affirmed the Commission's order. *See id.* § 2001.174.

By three issues, Occidental appeals the district court's final judgment, asserting that the Commission's order was arbitrary, an abuse of discretion, and not supported by substantial evidence.

## DISCUSSION

### Substantial Evidence

■ By its last issue, Occidental argues that there is not substantial evidence to support "the inferences, conclusions or decision that Occidental could have secured timely pre-approval if it had requested a hearing immediately after staff administrative denial." We review Commission decisions pursuant to the substantial-evidence rule. *See High Plains Natural Gas Co. v. Railroad Comm'n,* 467 S.W.2d 532, 538 (Tex.Civ.App.—Austin 1971, writ ref'd n.r.e.). In a substantial-evidence review, we must first determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the disputed action. *See Texas State Bd. of Dental Exam'rs v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988). The test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the agency's action. *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 452 (Tex.1984). We may not substitute our judgment for that of the agency and may consider only the record on which the agency based its decision. *Sizemore,* 759 S.W.2d at 116.

■ The agency's findings, inferences, and conclusions are presumed to be supported by substantial evidence, and the appealing party bears the burden of showing a lack of substantial evidence. *Charter Medical–Dallas,* 665 S.W.2d at 453. The appealing party cannot meet this burden merely by showing that the evidence preponderates against the decision. *Id.* at 452. Although substantial evidence is more than a scintilla, the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence. *Id.* If

---

5. At roughly the same time, two other operators, Exxon and Amerada Hess, applied for and were denied approval for similar expansions. About five months after the denials (and after hearings in each case), the Commission reversed the decisions and approved the Exxon and Amerada Hess expansions.

substantial evidence would support either affirmative or negative findings, the reviewing court must uphold the order, resolving any conflicts in favor of the agency's decision. *Id.* at 453.

The relevant Commission rule provides, "In order to be eligible for the recovered oil tax rate as provided in the Tax Code, § 202.054(b), the operator must apply for and be granted Commission approval of . . . an expansion of an existing [enhanced oil recovery] project, *prior to commencing active operation* of the . . . expanded project." 16 Tex. Admin. Code § 3.50(g)(1) (emphasis added). The record shows that Occidental's first request for approval of its expansion occurred in August 1996 and was denied. Occidental does not dispute that in October 1996 it began expansion without Commission approval, but argues that there are undisputed "facts" that "mitigate [its] inability to receive timely pre-approval prior to [Occidental's] commencement of 'expansion.'" However, even presuming such mitigating factors are present, there is still sufficient evidence in the record that Occidental did not follow statutory and regulatory requirements for expansion-project tax benefits. Both the tax code and the Commission's own rule are clear. We hold that Occidental's noncompliance provides a reasonable basis for the Commission's order. *See Charter Medical–Dallas,* 665 S.W.2d at 452. We overrule Occidental's final issue.

### Was the Commission's Action Arbitrary, Capricious, or an Abuse of its Discretion?

By its first issue, Occidental argues that the Commission's order "is arbi-

trary and denie[s] Occidental due process of law" because it contains errors that "are material and prejudice . . . [its] substantial rights" and because the Commission "rel[ies] on 'outside-the-record' facts" without providing prior "official notice" to Occidental that it would do so. By its second issue, Occidental argues that the Commission's order "is arbitrary and discriminatory" because it treats a "similarly situated applicant" differently.[6] We must reverse the Commission's order if the Commission's action was arbitrary, capricious, or an abuse of discretion. *See* Tex. Gov't Code Ann. § 2001.174; *Public Util. Comm'n v. Gulf States Utils. Co.,* 809 S.W.2d 201, 210–11 (Tex.1991). An agency decision is arbitrary when its final order denies parties due process of law, *see Lewis v. Metropolitan Savings & Loan Ass'n,* 550 S.W.2d 11, 16 (Tex.1977), or fails to demonstrate a connection between the agency decision and the factors that are made relevant to that decision by the applicable statutes and regulations, *see Gulf States Utilities,* 809 S.W.2d at 202. A court reviewing a decision for arbitrariness should consider all relevant factors and may not substitute its judgment for that of the agency. *See id.*

The Commission's order denying approval of Occidental's expansion project adopted the findings of fact and conclusions of law contained in the "Examiners' Report and Proposal for Decision" of the hearings examiners who heard Occidental's request for approval. Occidental strongly urges that the Commission relied on " 'outside-the-record' facts to reject Occidental's request for retroactive relief." Its argu-

---

**6.** The Commission argues that Occidental has waived both of these grounds for reversal by failing to adequately include each in its motion for rehearing before the Commission. *See* Tex. Gov't Code Ann. § 2001.145 (West 2000); *Suburban Util. Corp. v. Public Util. Comm'n,* 652 S.W.2d 358, 364 (Tex.1983). Without addressing the merits of the Commission's contention, we will assume Occidental has not waived either of its first two issues.

ment is based primarily on a portion of the examiners' report that refers to "[t]he history of the other tertiary miscible flood expansions." This language, posits Occidental, indicates that the examiners "swept away" the facts relevant to why Occidental did not continue to pursue approval of the Commission by seeking a hearing before commencing the additional $CO_2$ injection. We disagree.

The examiners' report makes several references to other expanded enhanced recovery projects:

> At about the same time [as the Occidental application], the operators of two other major $CO_2$ floods made similar applications at the Commission. Those applications, and [Occidental's], were denied administratively. The other operators requested hearings and their applications were eventually granted. [Occidental] believes that [its] application was similar to those that were approved after hearing, and is now requesting reconsideration of the administrative denial.
>
> . . . .
>
> The other two oil and gas dockets, Nos.[ ]8A–0213592, heard on September 26, 1996, and 08–0213807, heard October 23, 1996, involved similar tertiary miscible flood expansions. The final order in Docket No. 08–0213807 was approved January 7, 1997, and the final order in Docket No. 8A–0213592 was approved January 28, 1997. [Occidental] . . . believes that [its] application would have also been approved early in 1997, had [it] requested a hearing during the fall of 1996. [Occidental] pointed out that there is no deadline in [section 3.50] regarding the date that a hearing must be requested after an administratively [sic] denial, and is requesting approval of this application retroactive to July 1996.

. . . .

The applications under Docket Nos. 8A–0213592 and 08–0213807 were similar to [Occidental's] proposed expansion of an existing [enhanced oil recovery] project. Testimony established in those cases that significantly increasing the amount of injected $CO_2$ in a [water alternating with $CO_2$] process above the original plan can qualify as an expansion of a tertiary recovery process. [Occidental's] application may well have been approved if it had requested a hearing immediately after the administrative denial. Testimony in those hearings also indicated that even a short cessation in $CO_2$ injection would have been very expensive and might have resulted in the permanent loss of otherwise recoverable oil.

However, [section 3.50](g)(1) clearly requires approval of an application prior to active operations. *The history of the other tertiary miscible flood expansions* indicates that [Occidental] could have requested a hearing in mid-August and received a final ruling prior to beginning the expansion. In addition, [Occidental] could have simply made its original application earlier. [Occidental] made a business decision in 1996, that proceeding with its project without a tax reduction was preferable (and presumably more profitable) than taking a chance that the project would be delayed. The unambiguous terms of [section 3.50] (and the underlying statute-Tax Code § 202.054(c)) preclude the Commission from relieving [Occidental] of the consequences of [its] business decision.

(Emphasis added.) Both in the context of the examiners' report and in the record before them, it is clear that "the other tertiary miscible flood expansions" were the Exxon and Amerada Hess projects.

The only witness at the Commission hearing was Occidental's engineer, James Collier, and his initial testimony concerning the other projects was elicited by Occidental.[7] When one of the hearings examiners asked Collier what had changed since 1996 with regard to Occidental's project, Collier replied,

In essence nothing has changed. It is just that we now have empirical data that shows if you stop CO2 you will go on a steeper decline. What we are recommending is that the increment between the 80 percent case and the base waterflood case or the 50 percent case that would have occurred if the CO2 were stopped. I might add at this point that that is identical to the other two applications which were denied for the identical reason and then approved by the Railroad Commission subsequent to the hearings on those two matters.

Q [by an examiner]: Do you have the docket numbers of those matters that you are referring to?

A: Yes, I do. The other two cases I have been referring to were docket 8A–0213592, which was heard September 26, 1996, and Docket 08–0213807, which was heard by the Commission on October 23, 1996.

Later, when asked why Occidental did not request a hearing after the original administrative denial of its application, Collier identified the two other projects as those of Exxon and Amerada Hess:

There was nothing in the denial that tied us to a time to have to bring it back to a hearing. The hearings held on the other two cases were held in September and October. And the decision, at least in the Amerada case and I believe in the Exxon case, too, took about three to four months. So if we had brought it to hearing at roughly the same time as those other two dockets, we would have been past the 50 percent by the time we had gotten a positive ruling anyway.

Collier then explained what effect delaying the injection of additional $CO_2$ would have had on Occidental's project:

As I showed you, we would only have lost production and reserves if we had shut in the project waiting on approval. That was an option we could have done. We elected not to do that because we were trying not to lose reserves and rate. So we were sort of caught in a catch 22. We had to either shut the thing in waiting on internal policy to be made and see what happened as result [sic] of those other two hearings or we had to decide to just continue on, take the administrative denial and at some later date, which is what we are doing today, come in and show—and really we are smarter now because we now have empirical results showing that this project is working.

7. The testimony was as follows:

Coincidentally, at roughly the same time, two other operators of major field-wide CO2 floods in West Texas filed identical applications. And one was in the Means Unit in Andrews County and one was in the Seminole San Andres Unit in Gaines County. These were CO2 floods that had started up in the early '80S and the original design slug size was about to be reached and there were economics to spend the additional money and generate additional recovery of oil. Those two applications were also de-

nied. So there were three applications here that were denied administratively.

After that the Commission reversed itself, and the reason why those applications were denied were reversed here at the Commission. And after hearing those other two applications were approved. And what we are asking today is to—as [Occidental], we are still operating that project and we are asking that that application that was administratively denied now be approved as a result of this hearing and the evidence we are going to show today.

From Collier's testimony, it is evident that Occidental was directing the Commission to the Exxon and Amerada Hess cases and urging the Commission to consider both the similarities and differences between Occidental's situation and those in the two contemporaneous cases. Occidental cannot now be heard to object to references to the other projects as being "outside the record." The Exxon and Amerada Hess cases are "inside the record" and are there at the behest of Occidental.

■ Even if we were to accept the argument that the Commission's order contains a reference to facts not contained in the record, our result would be the same. The order adopts the examiners' findings of fact and conclusions of law in support of its decision. *See generally Smith v. Houston Chem. Servs., Inc.*, 872 S.W.2d 252, 266 (Tex.App.—Austin 1994, writ denied) (rejecting assertion that commissioner's comment during meeting indicated improper agency decision because "numerous findings of fact and conclusions of law indicate that the Commission as a tribunal performed its duty in determining the case based on the relevant law and the evidence"). We disagree with Occidental's claim that the order shows that the Commission relied on information about other entities' expansion approval experiences. The Commission's order reflects that the Commission considered the "examiners' report and proposal for decision [and] the findings of fact and conclusions of law contained therein." The findings of fact include the undisputed chronology of Occidental's July 1996 application, the Commission's administrative denial a month later, Occidental's subsequent commencement of its expansion project, and Occidental's 1998 request for a hearing to reconsider its original application.

Most importantly, conclusion of law number 3, adopted as a part of the Commission's order, states that the "[r]equest for certification was *not* approved prior to the beginning of the expansion of the existing project." Although this conclusion would have been more appropriate as a finding of fact, prior approval is required by the tax code in order for an operator to be eligible for the reduced production tax rate for oil production from expanded enhanced oil recovery projects. *See* Tex. Tax Code Ann. § 202.054(b); *see also* 16 Tex. Admin. Code § 3.50(g)(1) (Commission rule also requires prior approval). Such was recognized in the final conclusion adopted by the Commission: "[Occidental's] expanded tertiary recovery project does not qualify for certification under Statewide Rule 50 [8] or § 202.054 of the Texas Tax Code." (Footnote added.)

The Commission has provided a reasonable basis for its order; there is a clear connection between its final decision and the standards set by the tax code and the Commission's rule. *See Gulf States Utils.*, 809 S.W.2d at 202. In addition, Occidental has not shown that it was denied due process of law. *See Metropolitan Sav.*, 550 S.W.2d at 16. We overrule Occidental's first issue.

Occidental also argues that the Commission's order is "arbitrary and discriminatory as to Occidental because the Commission has granted retroactive relief to a similarly situated applicant," HCM, "that permitted HCM to pre-qualify their proposed expansion project under the terms of § 202.054 [of the tax code] and Rule 50." Occidental raised this argument for the first time in its motion for new trial before the district court and requested that the court take judicial notice of the pertinent

---

**8.** 16 Tex. Admin. Code § 3.50.

portions of the Commission's HCM record.[9] Specifically, Occidental alleged that the Commission "practiced unlawful discrimination" against Occidental in denying it tax benefits while ultimately granting "retroactive relief to a similarly situated applicant." [10]

■ In an administrative appeal of a contested case, the reviewing court is generally restricted to the administrative record. Tex. Gov't Code Ann. § 2001.175(e) (West 2000); *Ramirez v. Texas State Bd. of Med. Exam'rs*, 927 S.W.2d 770, 773 (Tex.App.—Austin 1996, no pet.). Occidental presented no evidence concerning HCM at the administrative hearing.

■ However,

[a] party may apply to the court to present additional evidence. If the court is satisfied that the additional evidence is material and that there were good reasons for the failure to present it in the proceeding before the state agency, the court may order that the additional evidence be taken before the agency on conditions determined by the court.[11]

Tex. Gov't Code Ann. § 2001.175(c) (West 2000) (footnote added). Occidental did not request the district court to order that evidence regarding HCM be taken before the Commission.

But Occidental asserts that a reviewing court may consider evidence not contained in the record before an administrative agency if the new evidence is subject to judicial notice. Occidental directs the Court to the government code: "The contents of the Texas Register are to be judicially noticed and are prima facie evidence of the text of the documents and of the fact that they are in effect on or after the date of the notation." *Id.* § 2002.022(a). Because the Commission's order in HCM was noted in the Texas Register, Occidental argues, it is *prima facie* evidence of the text of the order. Thus, the district court and this Court may and should consider the contents of the HCM order even though it has never been a part of the Commission's record in this case and was not presented to the district court except as a part of Occidental's motion for new trial. Although Occidental directs us to several authorities to support its proposition, we find the law is not so well settled.

In *Office of Public Utility Counsel v. Public Utility Commission*, the supreme court reversed a decision of this Court that upheld a contested rate-making order on the sole ground that the Office of Public Utility Counsel ("OPUC") had not timely filed a reporter's record. 878 S.W.2d 598, 598 (Tex.1994).[12] OPUC had requested

9. In its motion for new trial before the district court, Occidental asserted, *inter alia*, that (1) "[b]ased on newly discovered authority, the Judgment of the Court should be reversed," (2) "[a]nalysis of this newly discovered authority in light of the [Occidental] case requires the Court to reverse the Order issued in [Occidental]," and (3) the district court should "take judicial notice of the published Proposals for Decision and Final Order in the HCM case."

10. In summary, Occidental claims that HCM received administrative approval for the "expansion of a waterflood project" and began operations, but the Commission later denied

tax benefits because the original approval "was in error." According to Occidental, the Commission then "'bent over backward' to help qualify [HCM's] expansion project." Apparently HCM was ultimately allowed the benefit of the reduced production tax.

11. Occidental appears to have abandoned the argument that the HCM information was "newly discovered," though it did assert that in its motion for new trial.

12. The supreme court uses the term "statement of facts" for "reporter's record." The terms refer to the same portion of the appel-

that a reporter's record be prepared to include "the complete record of the proceeding conducted by the Public Utility Commission of Texas and entered into the District Court record as Plaintiff['s] Exhibit No. 1." *Id.* at 599. The supreme court held that in such instance the appellate court should identify and address issues that may be reached without a reporter's record. *Id.* at 598–99. The court also held that this Court erred "by refusing to take judicial notice of the published order of the PUC," which had been affirmed by the trial court. *Id.* at 600. The court noted that "[j]udicial notice is mandatory if 'requested by a party and [the court is] supplied with the necessary information.' " *Id.* (citing Tex.R. Evid. 201(d)). However, Texas Rule of Evidence 201 "governs only judicial notice of adjudicative facts." Tex.R. Evid. 201(a). Adjudicative facts "are those facts concerning the immediate parties[;] who did what, where, when, how, and with what motive or intent." *First Nat'l Bank v. Jarnigan,* 794 S.W.2d 54, 61 (Tex.App.—Amarillo 1990, writ denied). *Office of Public Utility Counsel* does not compel a court to take judicial notice of an agency order in a case other than the one then on appeal before the court.

*Big Three Industries, Inc. v. Railroad Commission* concerned whether a Commission order in a severed portion of a case could be introduced in evidence in the trial court if it was not a part of the record before the Commission but was incorporated by reference in the order on appeal. 618 S.W.2d 543, 549 (Tex.1981).

The Commission specifically incorporated the final order in Docket 500 into the record in Docket 1702 by its June 18 order. However, it did not physically place the Docket 500 order in the record. *The Commission cannot defeat appellate review by failing to include the final order or any other order properly a part of the record.*

*Id.* (emphasis added). Like *Office of Public Utility Counsel, Big Three Industries* does not support the proposition that evidence from an arguably similar, yet unrelated, case must be considered by the reviewing court if not included in the agency record.

This Court, in *Gulf Oil Corp. v. Railroad Commission,* was also asked to consider the Commission's orders in cases other than the one on appeal when the orders were not contained in the agency record. 660 S.W.2d 112 (Tex.App.—Austin 1983, writ ref'd n.r.e.). The Court assumed "without deciding or validating" the proposition that we may consider other Commission orders to determine whether the "Commission acted discriminatorily, arbitrarily, and capriciously, or in an abuse of discretion, notwithstanding that copies of those orders and other pertinent documents were not received in evidence in [the Commission hearing] and do not form part of the administrative record therein or the record on appeal to this Court." *Id.* at 119 (footnote omitted).

The Court observed that we could not take judicial notice of records in other proceedings without depriving an adverse party "of its right to contest the facts we may deem true by way of judicial notice." *Id.* at 119 n. 3. This, of course, is the problem. If a party to an administrative proceeding may utilize judicial notice to supplement the administrative record with orders from other proceedings, the adverse party has no practical way to respond to the supplementation, and the

late record. *Compare* Tex.R.App. P. 50(a), 53 (1986, amended 1997), *in* 49 Tex. B.J. 556 (1986), *with* Tex.R.App. P. 34.1, 34.6. For

clarity, we use the term found in the current Texas Rules of Appellate Procedure.

agency's findings and conclusions are rendered incomplete by virtue of the fact that the new evidence was not before it at the time of rendering a decision.

Gulf, however, argued that the orders in other cases "were referred to throughout the proceedings" in the case on appeal. *Id.* Thus, they bear some similarity to the Exxon and Amerada Hess orders considered by the Commission here.[13] But Gulf went on to assert that the Court should consider the orders because they "were reported in the 'Gas Utilities Bulletin,' a 'regular reporting system of the Railroad Commission,' citing *Southwestern Bell Telephone Co. v. Nash.*" *Id.* Occidental also requests that we consider the HCM orders on the basis of *Nash.* In *Nash* we held that "this Court will take judicial notice, in appropriate cases, of the acts of administrative bodies officially published in the Texas Register." *Southwestern Bell Tel. Co. v. Nash,* 586 S.W.2d 647, 649 (Tex.Civ. App.—Austin 1979, no writ). *Nash* was decided by a divided court, with a concurrence criticizing the majority's reliance on seemingly parallel provisions of state and federal law to reach its holding, *id.* at 651 (Shannon, J., concurring), and observing that "[t]he [Texas] Supreme Court has written that the statement that the courts of Texas are required to take judicial notice of administrative rules and regulations adopted by all federal departments, boards, and commissions pursuant to statute is 'overbroad.'" *Id.* at 651 n. 1 (citing *Tippett v. Hart,* 501 S.W.2d 874 (Tex. 1973)).

Today we repeat the concern we expressed almost eighteen years ago in *Gulf Oil* concerning the difficulty and propriety of evaluating contentions on appeal when those contentions depend on the Commission's action in cases other than the one

before the Court and on evidence not presented to the Commission. But as we did in *Gulf Oil,* we will "assume for purposes of the present appeal, without deciding the matter, that we may examine and consider the Commission's actions in [HCM] based upon copies of documents therefrom furnished to us by the parties on appeal." *Gulf Oil,* 660 S.W.2d at 119 n. 3. Having examined the HCM documents presented by Occidental and, for purposes of argument, taken as true the "HCM Case Facts" presented in Occidental's brief, we conclude that the case before us is not so similar to HCM as to reflect such a disparity in the Commission's actions in the two cases to conclude that the Commission's order is "arbitrary and discriminatory as to Occidental." HCM applied for and received administrative approval *before* beginning its expansion project. Three years later, after completing the project and achieving enhanced production, HCM applied to the Commission for positive production response certification, which would allow it to receive the benefit of the lower production tax rate. *See* Tex. Tax Code Ann. § 202.054(b). The Commission administratively denied the application on the basis that the original approval was in error because the project did not qualify as an expansion. HCM requested a hearing, but the examiners recommended against approval. Ultimately, the Commission granted approval retroactive to the date that HCM first sought approval for its expansion project.

We hold that the Commission's action in HCM does not reflect that the Commission acted in an arbitrary and discriminatory manner in denying Occidental's request for retroactive approval when Occidental's request for certification was never administratively approved and Occidental did not

---

**13.** The HCM order was not before the Commission, having been presented for the first time as an exhibit to Occidental's motion for new trial before the district court.

at once pursue a hearing of such denial. We overrule Occidental's second issue.

## CONCLUSION

Having overruled all of Occidental's issues and held that the Commission's order is supported by substantial evidence and is neither arbitrary, capricious, nor an abuse of discretion, we affirm the district court's final judgment.