**WAR–PAK, INC., et al., Appellants,**

v.

**Bob RICE, Appellee.**

**No. 6172.**

Court of Civil Appeals of Texas,
Waco.

Aug. 7, 1980.

Rehearing Denied Sept. 4, 1980.

Robert A. Sparks (on appeal only), Cleburne, Hilton H. Howell & Richard E. Brophy, Naman, Howell, Smith, Lee & Muldrow, P. C. (on appeal only), Waco, for appellants.

Robert J. Wilson, Robert J. Wilson & Associates, Burleson, for appellee.

## OPINION

JAMES, Justice.

This is a suit for damages allegedly resulting from the cancellation of corporate stock and the termination of employment contracts. The suit was instituted by Appellee Bob Rice, individually, against War–Pak, Inc., Amark Container Corporation, C. K. Henslee, Marion C. "Bud" Kimbell, Lester Justice, Tony Allen, and Lynn Foster. Rice's pleadings alleged that the Defendants had "conspired to deprive him of his 25% ownership rights in Amark Container and to deprive him of his employment contract rights with that corporation and War–Pak, Inc." Defendant Lynn Foster was dismissed prior to trial; Defendant Allen was non–suited during trial; and no issues were submitted as to Defendant Justice's liability in this case. Trial was completed to a jury, which answered all special issues in favor of Rice, finding actual damages totalling $259,900.00 and exemplary damages totalling $133,000.00. The trial court disregarded some of the jury's findings, and ordered a remittitur of part of the damages, and rendered final judgment in favor of Plaintiff–Appellee Rice against Defendants War–Pak, Henslee and Kimbell, jointly and severally, for recovery of $135,800.00 actual damages and for exemplary damages respectively of $10,000.00 against War–Pak, $4,167.00 against Henslee, and $1,000.00 against Kimbell, from which judgment War–Pak, Henslee and Kimbell have perfected this appeal. We affirm in part, reverse and render in part, and reverse and remand in part.

The factual basis and the history of this action are extremely complex and must be presented in some detail before the assigned errors can be discussed.

War–Pak, Inc. was organized and incorporated in Cleburne, Texas by Bob Rice and Tony Allen. Rice and Allen had both worked for various companies that manufactured and sold trash containers similar to what are sometimes called "Dempster Dumpsters." In 1975 Rice and Allen decided to manufacture their own trash containers and they organized War–Pak, Inc. for that purpose.

The organizational meeting of War–Pak was held on November 6, 1975. At that time Rice and Allen were elected to serve as directors of the corporation until the first annual meeting of stockholders. Acting as directors, they issued 500,000 shares of stock to themselves, Rice receiving 255,000 and Allen receiving 245,000. The organizational minutes recited that this stock was issued in consideration of the "transfer" by Rice and Allen of "the sum of $26,000.00, plus a four cubic yard packer valued at $2000.00." At this same meeting Rice was elected President and Treasurer of the corporation and Allen was elected Vice–President. Thus, in the beginning, Rice and

Allen were the sole stockholders of War–Pak, the only directors, and effectively the only officers.

The corporation was very thinly capitalized. It is undisputed that Rice and Allen had only paid $1000.00 in cash into the corporation at the time the stock was issued. The record shows that on November 10, 1975, they secured a $25,000.00 line of credit for War–Pak from a local bank, but this line of credit was for "operating expenses." This $25,000.00 loan was ultimately paid by War–Pak, Inc. The corporation had no plant for manufacturing the trash containers and initially all manufacturing efforts had to be sub–contracted out to other firms.

In January of 1976, in an effort to raise additional capital, Rice and Allen decided to sell War–Pak stock to "10 or 15 other persons." They set the value of the stock at $1.00 per share and further decided to require a minimum purchase of 5000 shares. The corporate records reflect that by January of 1977 Rice and Allen had sold at least 83,700 additional shares of stock to 13 stockholders, which stockholders included Appellants Henslee and Kimbell. At the 1977 annual stockholders meeting, the number of directors was expanded to five, and three stockholders–Henslee, Justice, and Rowland–were elected as directors, in addition, of course, to Rice and Allen. Subsequently, new officers were also elected, to wit, President–Tony Allen, Vice–President–Bud Kimbell, Sec.–Treas.–Bob Rice. In spite of the new directors and officers, Rice and Allen continued to run the company.

War–Pak's future appeared brighter in January of 1977. The corporation had decided to build a manufacturing plant in Bosque County and had secured a Small Business Administration loan in the amount of $126,000.00 ($25,000.00 of which was used to repay the original "line of credit" secured by Rice and Allen) to finance the construction. In addition, the corporation had collected about $85,000.00 in cash from the recent sales of stock. Unfortunately, however, the company continued to lose money. In June or July of 1977 the new

stockholders, including Henslee, Kimbell, and Justice, began to ask questions about the capitalization of the corporation, particularly about the issuance of the original 500,000 shares of stock to Rice and Allen.

At about the same time, Rice and Allen negotiated a deal with Lynn Foster to form a new corporation, to wit, Amark Container Corporation. Rice and Allen agreed to convey to Amark Container their 500,000 shares of War–Pak stock in exchange for 49% of Amark Container stock. Lynn Foster was to receive 51% of the Amark Container stock in exchange for certain patent rights which he had actually acquired from Bob Rice.

In July of 1977, Amark Container was officially incorporated. The purpose of Amark Container was hotly disputed in the record. Rice and Allen testified that it was organized solely as a means of securing a loan for War–Pak. Apparently Lynn Foster was a principal stockholder, director, and officer of another corporation called Amark International, Inc. Rice and Allen claimed that Foster had agreed to loan money to War–Pak but demanded a controlling interest in Amark Container as security. It is undisputed that Amark International did loan War–Pak $50,000.00 which loan was secured by all of the inventory and accounts receivable of War–Pak. On the other hand, Henslee, Kimbell, and the other stockholders of War–Pak believed that Amark Container was organized to isolate the new investors in War–Pak and to deprive them of the benefits of their interest in War–Pak. It is also undisputed that Rice and Allen were the only two War–Pak stockholders who were included in the creation of Amark Container. It is further undisputed that no meetings of War–Pak directors or stockholders were held after the incorporation of Amark Container, except as hereinafter shown. Furthermore, from July, 1977 to October, 1977, Amark Container totally controlled War–Pak. Rice and Allen managed Amark Container; Allen was President and Rice was Vice–President. Both of them entered into em-

ployment contracts with Amark and began receiving salaries from Amark Container; in addition Rice and Allen continued to receive salaries as "employees of War–Pak." Amark Container took control of all of War–Pak's funds; it did all of the invoicing for products manufactured by War–Pak; and it kept all of the accounts receivable for the War–Pak products. Money was transferred from Amark to War–Pak only when necessary to meet expenses; all profit, if there was any, was retained by Amark Container. No funds, either in the name of Amark Container or War–Pak, were ever applied to pay the loan from Amark International to War–Pak.

On August 18, 1977 a number of disgruntled War–Pak stockholders (including Henslee), suing on behalf of all stockholders similarly situated, filed suit in the 18th District Court of Johnson County, Texas, against Rice, Allen and War–Pak, contending that Rice and Allen had never paid the consideration fixed by War–Pak for the issuance of the 500,000 shares of War–Pak stock and therefore the issuance of the stock was void and should be so declared. The suit further alleged that various misrepresentations were made by Rice and Allen in connection with the sale of stock to the new stockholders and that damages had resulted therefrom. Testimony in the trial of this case indicates that the Johnson County case is still pending.

During October of 1977, Rice and Allen became dissatisfied with their relationship with Lynn Foster. At this time, Rice and Allen no longer held a controlling interest in War–Pak; in fact they did not directly own any War–Pak stock. They owned stock in Amark Container, which in turn owned 500,000 shares of War–Pak stock; but, even so, Foster had the controlling 51% interest in Amark Container. Both Rice and Allen were still Directors and Officers of War–Pak, however; and they both attempted to regain the favor of the War–Pak stockholders. At the same time, Rice and Allen began to squabble between themselves; thus, although they both attempted to re–align themselves with War–Pak, they, at the same time, sought to discredit and

dispossess one another. For example, on October 17, 1977, Rice called a directors meeting of War–Pak for the purpose of "considering the termination of Tony Allen's employment with War–Pak." No such action was taken, but the deteriorating situation with Foster and with Rice and Allen was discussed.

At the same meeting, $30,000.00 of the funds that had been retained by Amark Container were transferred to War–Pak. Apparently Foster found out immediately that the $30,000.00 had been transferred, because the next day, October 18, 1977, Amark International, acting through Foster, declared that the transfer of funds constituted a violation of the War–Pak loan agreement and further declared the $50,-000.00 War–Pak note immediately due and payable. Testimony indicated that Foster also "let it be known" that he would personally transfer his 51% interest in Amark Container to anyone who paid off the War–Pak note. The stockholders of War–Pak, along with Tony Allen, arranged for a bank loan (in the form of a bank overdraft) and used the proceeds of this loan, along with $30,000.00 transferred from Amark Container, to pay $57,000.00 (including principal, interest and "management fees") due Amark International. Foster, acting for Amark International, released the lien theretofore held on the assets of War–Pak. Foster also conveyed his 51% interest in Amark Container to War–Pak. In addition Foster, apparently acting for Amark Container, conveyed to War–Pak the 500,000 shares of War–Pak stock that had become assets of Amark Container when Rice and Allen exchanged this War–Pak stock for Amark Container stock. Rice did not take part in any of these transactions, but Allen actively participated in all of them.

On October 24, 1977, Tony Allen, acting as President of Amark Container, sent a letter to Rice terminating his employment with Amark Container. On October 31, 1977, the Board of Directors of War–Pak met, allegedly without notifying Rice, and acted to terminate Rice's duties as an officer of War–Pak and also acted to remove

Rice from the Board of Directors of War–Pak, and cancelled the 500,000 shares of War–Pak stock formerly held by Rice and Allen. Apparently at some later date, Allen was also terminated as an officer and removed as a director of War–Pak.

On March 2, 1978, this suit was filed by Rice, who, individually, sued War–Pak, Inc., Amark Container Corporation, Tony Allen, C. K. Henslee, Lester Justice, Bud Kimbell, and Lynn Foster, alleging, inter alia:

"That Plaintiff would show that on or about October 24, 1977, he was a stockholder of approximately 25% of the stock of Amark Container Corp. He was also a director, officer, and employee of said Corporation. Plaintiff was also a director, officer, and employee of War–Pak, Inc. Plaintiff had contracts of employment with both Corporations . .

"That on or about October 24, 1977, the Defendants entered into a conspiracy to deprive Plaintiff of his 25% ownership right in Amark Container Corporation, and to deprive him of his employment contract rights with that Corporation and War–Pak, Inc. Said unlawful conspiracy was carried out as follows:

(a) That the abovesaid named individual Defendants, Tony Allen, C. K. Henslee, Lester Justice, Bud Kimbell, acting as individuals and also as directors of War–Pak, Inc., held that an unlawful director's meeting of War–Pak, Inc., on or about October 24, 1977, for the purposes of conspiring and planning to use assets of War–Pak, Inc. to purchase the 51% of Amark Container Corporation stock held by Lynn Foster for the purpose of taking control of Amark Container Corporation and War–Pak, Inc., and destroying and cancelling the only asset of Amark Container Corporation, to wit: 500,000 shares of War–Pak, Inc. stock, which had the effect of making the 25% ownership rights of Plaintiff in Amark Container Corporation worthless. Said individual Defendants planned to terminate Bob Rice as a director, officer and employee of War–Pak, Inc., and Amark Container Corporation.

\* \* \* \* \* \*

"That the above act or acts of an unlawful conspiracy by the Defendants proximately caused the following damages to Plaintiff:

(a) Destroyed the value of his 25% ownership interest in Amark Container Corporation in that said interest was reasonably worth $156,250.00, immediately prior to the cancellation of the 500,000 shares of War–Pak stock by Defendants, and was worthless immediately thereafter;

(b) Plaintiff was immediately fired by Defendants from his positions as an employee, officer and director of War–Pak, Inc., and Amark Container Corporation in complete disregard to his employment rights conferred to him under his employment contract with Amark Container Corporation and under written resolutions of employment and compensation by War–Pak, Inc.'s corporate minutes. Plaintiff was thereby damaged in the amount of $1,500.00 per month from October 24, 1977, until he would have retired at the age of 65 years.

(c) That Plaintiff is entitled to exemplary damages in the amount of $500,000.00 from Defendants, jointly and severally, for the intentional, wanton acts done in an effort to damage him personally."

Rice's suit was originally filed in Johnson County but was not filed as a part of the cause that had been brought by the War–Pak stockholders in August of 1977. Rice's suit was transferred to Bosque County when the Defendants' pleas of privilege were sustained. Thereafter, on February 8, 1979, War–Pak filed a plea in abatement advising the Bosque County Court of the first filed action which was still pending in Johnson County, same being the suit filed by C. K. Henslee, et al., against War–Pak, Rice and Allen. The plea was overruled and Rice's suit proceeded to trial.

■ The first error assigned by Appellants is the trial court's action in overruling the plea in abatement alleging the prior

pending suit. The court's order overruling the plea recites that a hearing was had on the plea on May 14, 1979; but the record contains no statement of facts from that hearing. A defendant asserting a plea in abatement based on the pendency of a prior suit has a burden to plead *and prove* that the two suits involve the same cause of action, concern the same subject matter, involve the same issues, and seek the same relief. *Rowland v. Prappas* (Houston 1st Tex.Civ.App.1973) 491 S.W.2d 179, n. r. e.; *Nowell v. Nowell* (Dallas Tex.Civ.App.1966) 408 S.W.2d 550, writ dism.; 1 Tex.Jur.2d Abatement and Revival, Secs. 34, 35, pgs. 56 et seq. Without the statement of facts, it must be presumed on appeal that the Defendants in this case failed to meet that burden and that the evidence supports the trial court's order overruling the plea in abatement. *Ehrhardt v. Ehrhardt* (Waco Tex.Civ.App.1963) 368 S.W.2d 37, writ ref'd; *Geyer v. Jones* (San Antonio Tex.Civ.App. 1936) 93 S.W.2d 1192, writ dismissed. Appellants' first point of error is overruled.

■ Appellants further contend that the trial court erred in rendering judgment in favor of Rice as an individual for the stated reason that the cause of action asserted by Rice, other than for alleged breach of his employment contracts, was the exclusive property of the corporation, to wit, Amark Container Corporation, and if asserted, it could have been asserted only by Amark Container or by a minority shareholder's derivative suit. Defendant–Appellants filed sworn pleadings alleging, "Plaintiff is not entitled to recover in the capacity in which he sues"; however, our careful search of this lengthy record does not reveal that this affirmative defensive matter was ever presented to, or acted upon by the trial court. This being so, Appellants have waived this defense, and same cannot be raised for the first time on appeal. *Sabine River Authority of Texas v. Willis* (Tex. 1963) 369 S.W.2d 348; *Pierce v. Baker* (Eastland Tex.Civ.App.1940) 143 S.W.2d 681, writ refused.

■ Appellants further contend that the trial court erred in rendering judgment for Rice because there was no evidence to support the jury's answer to Special Issue No. 1 to the effect that War–Pak received the agreed consideration to be paid by Rice for the issuance to him of 255,000 shares of War–Pak stock; and further, that the jury's answer to said Special Issue No. 1 is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust under the doctrine of *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Special Issue No. 1 as submitted to the jury read as follows:

"Do you find from a preponderance of the evidence that War–Pak, Inc. received the agreed consideration to be paid by Bob Rice for the issuance of 255,000 shares of corporate stock to the said Bob Rice? Answer 'yes' or 'no.' "

To which issue the jury answered, "yes."

We are of the opinion and hold that the jury's answer to said issue is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust, and for such reason we reverse and remand this cause to the trial court for retrial on the merits.

On November 6, 1975, the organizational meeting of the Board of Directors of War–Pak was held. Attached to the minutes of that meeting is a "Proposal for Transfer" whereby Rice and Allen proposed to transfer the sum of $26,000.00 plus a four cubic yard packer valued at $2000.00 to the corporation in exchange for the issuance of the following shares being issued:

To Tony Allen, 245,000 shares.

To Bob Rice, 255,000 shares.

The corporate minutes show a resolution adopted whereby War–Pak accepted the proposal of Rice and Allen, to the effect "that upon delivery to this corporation of said assets ___ the officers of this corporation are authorized and directed to execute and deliver the certificates for such shares ___."

The stock was issued to Rice (255,000 shares) and Allen (245,000 shares) on November 6, 1975; however, neither the $26,-

000.00 nor the packer worth $2,000.00 were ever paid or delivered to War–Pak. The evidence shows that Rice and Allen each paid $500.00 in cash, same being a total of $1000.00. Then a $25,000.00 line of credit was established for the corporation with the Bosque State Bank, whereby said bank agreed to loan, and did subsequently advance to War–Pak the total sum of $25,000.00, in varying amounts and at future dates, which loan was ultimately repaid to said bank by War–Pak, Inc. out of the proceeds of the Small Business Administration loan. The testimony is undisputed that none of the $25,000.00 had been drawn from said Bank on November 6, 1975, the date of issuance of the shares of stock to Rice and Allen. Concerning the packer asserted to be worth $2,000.00 which was supposed to be delivered to the corporation on November 6, 1975: Rice and Allen testified that this packer had been used some by the corporation; however, title to same was lost because it was mortgaged for repairs. Thus, a fair evaluation of the evidence shows that no consideration except for the $1,000.00 was paid to War–Pak for issuance of the 500,000 shares. Since the proposal for transfer called for consideration of $26,000.00 plus a $2,000.00 packer, these 500,000 shares were invalidly issued.

Appellants requested the submission of a special issue which would have asked the jury whether or not War–Pak, Inc. received the agreed consideration *at or prior to November 6, 1975*, for the issuance of the 255,000 shares issued to Rice. The trial court refused to so limit the issue, and Appellants now complain that Special Issue No. 1 should have been submitted subject to such time limitation. We agree.

Article 12, Section 6, Texas Constitution, provides: "No corporation shall issue stock . . . except for money paid, labor done, or property actually received . . ." And Article 2.16, Texas Business Corporation Act in its pertinent parts provides:

"Payment for Shares

"A. The consideration paid for the issuance of shares shall consist of money paid, labor done, or property actually received. Shares may not be issued until the full amount of the consideration, fixed as provided by law, has been paid. . . .

"B. Neither promissory notes nor the promise of future services shall constitute payment or part payment for shares of a corporation."

For cases wherein the issuance of corporate stock has been held void because of violations of Article 12, Section 6, Texas Constitution, and Article 2.16, Texas Business Corporation Act, see *United Steel Industries, Inc. v. Manhart* (Waco Tex.Civ. App.1966) 405 S.W.2d 231, NRE; *Vermilion Parish Peat Co. v. Green Belt Peat Moss Co.* (Dallas Tex.Civ.App.1971) 465 S.W.2d 950, NRE.

Appellants also contend that there was no evidence to support the trial court's judgment awarding damages for breach of Rice's alleged employment contracts respectively with War–Pak and Amark Container. Rice asserted two claims for breach of contract: one for breach of an employment contract with War–Pak and the other for breach of an employment contract with Amark Container. Rice testified that his employment contract with War–Pak was based on a corporate resolution of War–Pak adopted at a special meeting of the board of directors on November 12, 1975. In support of this contention he introduced the minutes of that meeting which read, in pertinent parts, as follows:

"Salaries were discussed. Bob Rice stated the present salary of $1200.00 per month would exist for the President & Vice–President for a period no longer than at such a time when the company could afford to increase. We feel that these salaries should be at least $25000.00 per year, at this time. Tony Allen put the above in the form of a motion and it was seconded by Bob Rice."

This resolution at best established that the salaries for the President and Vice–President of War–Pak were set at $1200.00 per month, that amount to be increased when possible. At the time of the meeting, Allen was the duly elected President of War–Pak and Rice was Vice–President. At the time

of Rice's alleged termination Allen was President, Kimbell was Vice–President, and Rice was Sec.–Treasurer of War–Pak. Furthermore, the resolution did not specify the length of the employment, nor did it set forth any other terms of employment. Rice did not testify as to any terms of the alleged contract, but rested his entire claim on this resolution. The only other testimony regarding Rice's employment contract with War–Pak came from Tony Allen who said that he, as President of War–Pak, had the authority to terminate Rice's employment at any time.

■■ As a general rule, when a contract does not specify a time period or does not prescribe conditions for termination, the contract may be terminated by either party at will. *East Line & R. R. R. Co. v. Scott*, 72 Tex. 70, 75, 10 S.W. 99, 102 (1888) (employment contract); *Horn v. Builders Supply Co. of Longview*, (Tyler Tex.Civ.App. 1966) 401 S.W.2d 143, n. r. e. (employment contract); *Clear Lake City Water Auth. v. Clear Lake Utility Co.*, 549 S.W.2d 385 (Tex. 1977). There was no evidence of any terms of the employment contract with War–Pak except as to salary. We therefore hold that the contract, if any, was terminable at the discretion of either party, with or without cause, and Rice's termination from War–Pak could not have constituted a breach of contract. We hold there was no evidence to support the trial court's judgment awarding Rice damages for breach of any asserted employment contract with War–Pak, and hold as a matter of law that Rice is not entitled to recover for such. We reverse and render judgment that Rice take nothing as regards the alleged War–Pak employment contract.

■ In Rice's claim for breach of an employment contract with Amark Container, he relied on a written employment contract executed on July 11, 1977, which, inter alia, provided that:

"Employer hereby employs the Employee and Employee hereby accepts employment with Employer for a period of one year, beginning on the 15th day of July, 1977; however, this agreement may be terminated earlier as provided herein.

\* \* \* \* \* \*

"The employment of the Employee shall continue only as long as the services rendered by the Employee are satisfactory to the Employer, regardless of any other provision contained in this agreement. The Employer shall be the sole judge as to whether or not the services of the Employee are satisfactory.

"If the Employee willfully breaches or habitually neglects the duties which he is required to perform under the provisions of this agreement, the Employer may at his option terminate this agreement by giving written notice of termination to the Employee without prejudice to any other remedy which the Employer may be entitled to either at law, in equity, or under this agreement. This agreement may be terminated by either party giving thirty (30) days written notice of termination to the other party."

In response to special issues, the jury found that Rice "had a contractual right to continued employment with Amark Container Corporation", and that "Amark Container Corporation wrongfully terminated said contract." The jury also found that Henslee and Kimbell "participated in said termination willfully and maliciously." The jury found that Rice sustained $10,500.00 in actual damages; however, the trial judge ordered a remittitur of $8,100.00 and entered judgment against War–Pak, Henslee and Kimbell for $2400.00 actual damages.

By the express terms of the written employment contract with Amark Container "either party" had the right to terminate the contract by "giving thirty (30) days written notice." There was no evidence that this term had been modified by the agreement of the parties. The evidence was undisputed that Tony Allen, as President of Amark Container, gave written notice of termination to Rice on October 24, 1977. By the express terms of the contract, Rice was only entitled to receive compensation for not more than thirty (30) more days after the receipt of the notice. The Amark

Container contract provided for a monthly salary of $1500.00 less any amount received in compensation from War–Pak. The record in this case is unclear as to what amount, if any, Rice received from War–Pak during the thirty–day period following October 24, 1977. Nonetheless, the maximum liability that could have resulted from the termination by Amark Container is $1500.00 in actual damages. The jury's verdict of $10,500.00 actual damages and the judge's award of $2400.00 are therefore excessive. Thus, we reverse and remand for retrial in its entirety Rice's claim for breach of the Amark Container employment contract, subject to the condition that Rice's recovery could not exceed thirty days' pay.

We note that Appellants have asserted on this appeal that there could be no liability whatsoever for termination of the Amark contract because Amark could terminate the employment if Rice's services were unsatisfactory and Amark was to be the "sole judge" of whether or not Rice's services were satisfactory. For purposes of retrial only, we would point out that contractual provisions making the employer the "sole judge" of performance are valid and enforceable provisions, but any termination made pursuant thereto may be attacked if it is not in "good faith." See *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80 (Tex.1976) and *Kree Institute of Electrolysis v. Fageros*, (Waco Tex.Civ.App.1972) 478 S.W.2d 569, n. r. e., for a more complete discussion of the issues relating to this kind of contractual provision and terminations made pursuant thereto.

Appellee Rice's single cross–point asserts the trial court erred in "not entering judgment in favor of Rice against Lester Justice as being jointly and severally liable with the other Appellants for the damages entered in the judgment." We overrule this contention.

Lester Justice was sued as a Defendant by Rice; he filed no written pleadings; however, he personally appeared at the trial and was called as a witness by Rice and testified. At the conclusion of the trial,

Rice did not request the submission of any special issues seeking any recovery against Justice, nor did the trial court submit any such issues to the jury. The trial court's judgment recites that "Bob Rice, Plaintiff, take nothing against Lester Justice, Defendant." In this state of the record, Rice has waived any recovery against Lester Justice, and for such reason we affirm this portion of the trial court's judgment.

For the reasons hereinabove stated, we hereby make the following disposition herein:

(1) That portion of the trial court's judgment wherein it was held that Rice take nothing against Lester Justice is affirmed;

(2) That portion of the judgment wherein Rice was allowed recovery for damages growing out of his asserted contract of employment with War–Pak, Inc., is hereby reversed and rendered to the effect that Rice take nothing therefor;

(3) All of the rest of said judgment with the sole exceptions of (1) and (2) above is hereby reversed and remanded for retrial on the merits.

(4) Costs of appeal are assessed against Appellee Bob Rice.

AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REVERSED AND REMANDED IN PART.