**INTEGRATED TITLE DATA SYSTEMS, Roland F. Streit, Virginia Streit, and Linda F. Lillard, Appellants,**

v.

**Richard Key DULANEY, Appellee.**

**No. 08–89–00387–CV.**

Court of Appeals of Texas, El Paso.

Nov. 21, 1990.

Rehearing Overruled Dec. 19, 1990.

John Steven Dwyre, John Dwyre & Associates, San Antonio, for appellants.

Darrell F. Smith, Darrell Frank Smith, P.C., San Antonio, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In a deceptive trade practice and breach of warranty case involving the sale and licensing of computer hardware and a software system, tried without a jury, the court awarded Appellee (Plaintiff below) $39,939.00 in actual damages, $2,000.00 in DTPA exemplary damages, prejudgment interest and attorney's fees. From that judgment, Appellants bring this appeal. We affirm.

Richard Key Dulaney, Appellee, an oil and gas landman, was approached by Appellant Linda F. Lillard and offered a package of goods and services for the establishment of a computerized title abstract plant. The ensuing agreement, dated December 21, 1985, provided for a sale of computer hardware, a license to utilize the software program developed by the Appellants, training for Appellee and his employees, a non-competition clause prohibiting Appellants' sale of the software to any competitors within the four counties covered by Appellee's license, five days of on-site consultation, and one year of programming updates and improvements. By a second, subsequent contract, Appellee engaged Appellants' services for actual data entry into the system for Winkler County land records.

While the contract was entered with Appellee individually, the abstract business was implemented through the use of a limited partnership (Advance Abstract & Title, Ltd.) in which the general partner was Advance Title Technologies, Inc., a closely held corporation in which Appellee and one Frank Tirey were the sole shareholders. Tirey entered the venture by capital contribution to the corporation after the contract was executed by Appellants and the Appellee.

From February to July 1986, Appellee and his employees were engaged in microfilming land records. Actual use of Appellants' equipment and software program began in July 1986 and ended in late August or September of that year. Appellee and his employees experienced problems with the system which caused him to complain on several occasions to the Appellants. As a result of the complaints, Appellants provided a "transport program" to compensate for the difficulties, but did not attempt to eliminate them.

Eventually, Appellee shifted to another software system and demanded a refund of his money, as well as consequential damages. He contended that the Appellants initially warranted a "user friendly" system that would be fully functional upon installation and that Appellants knew at the time of expression that these warranties were false.

Appellants, in their first three points of error, complain that there is "no evidence" and "insufficient evidence" first, of the fair market value of goods, services and license actually received, necessary to support the court's finding of the difference between the value paid and the value received; second, that any representation made by Appellants was a producing cause of actual damage; and third, that Appellee suffered any actual damage resulting from the purchase.

When presented with a "no evidence" challenge, the appellate court should consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury verdict or court finding. All evidence and inferences to the contrary are to be disregarded. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America, et al.*, 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford*, 726 S.W.2d at 16.

When a factual sufficiency challenge is brought, the court must first examine all of the evidence, *Lofton v. Texas Brine Corporation, et al.*, 720 S.W.2d 804, 805 (Tex. 1986); and after considering and weighing all of the evidence, the court may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain, et al. v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Since an appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would support a different result. *Clancy v. Zale Corporation*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

Before addressing the actual evidentiary complaints, certain collateral issues raised by Appellants' brief and certain procedural assertions made in the brief need to be corrected and resolved. Contrary to the assertion made early in Appellants' argument, the trial court did not exclude evidence of fair market value from Appellee's expert, James Wright. The trial court twice expressly overruled objections to such testimony on the basis of asserted failure to disclose the expert in advance of trial and failure to establish his competency or expertise in the area of market value.

■ In addition, Appellants' concluding paragraphs of the argument for these three points of error assert Appellee's lack of standing to sue in his own name and set-offs against damages in the form of proceeds received by Appellee from purported subsequent "resale" of the software, hardware and other package items to Frank Tirey and Advance Abstract & Title, Ltd. While Appellants filed an amended (treated as supplemental) answer presenting a sworn denial of standing to sue under Tex.R.Civ.P. 93, they never obtained a ruling from the trial judge on that issue. The standing question was therefore waived. *War–Pak, Inc. v. Rice*, 604 S.W.2d 498, 503 (Tex.Civ.App.—Waco 1980, writ ref'd n.r. e.).

■ Set-off is an affirmative defense which must be specifically alleged in a defendant's answer under Tex.R.Civ.P. 94, and which must be presented to and ruled upon by the trial judge. *Brown v. American Transfer and Storage Company*, 601 S.W.2d 931, 936 (Tex.1980), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); *Southwestern Bell Telephone Co. v. Gravitt*, 551 S.W.2d 421, 428 (Tex.Civ. App.—San Antonio 1977, writ ref'd n.r.e.). Of course, even in the absence of the re-quired pleading, the issue may be raised by evidence introduced without objection and consequently, tried by consent, as if under a trial amendment. Tex.R.Civ.P. 66. Failure to formally execute a written trial amendment, absent objection by the other side, will not bar consideration of the issue so raised and tried by consent, particularly in a non-jury trial. Tex.R.Civ.P. 67.

■ This case, however, does not present an issue of set-off tried by consent, despite the introduction of evidence which collaterally and arguably supports Appellants' claims concerning later proceeds received by Appellee from the use or sale of the goods, services and license purchased from the Appellants. Such evidence was not exclusively referable to a set-off claim. Set-off was not argued to the trial judge at either the close of the Appellee's case-in-chief or at the conclusion of the trial on the merits. Even on appeal, Appellants do not acknowledge their burden of proof as to set-off as an affirmative defense. Instead, Appellants simply urge the designated evidence as indicative of Appellee's failure to meet his burden of proof on actual damages. Accordingly, by neither formal pleading nor informal trial amendment has a set-off issue been raised for consideration under Points of Error Nos. One, Two and Three.

■ The issues under these first three points thus resolve into a simple question of the adequacy of the evidence to support the award of $39,939.00 in actual damages. Rescission and restitutionary damages were alternatively included in the pleadings but were abandoned. Ordinarily in a DTPA action predicated, as in this case, upon breach of warranty, the measure of damages is the difference between the market value as promised and the market value of what is actually received. *Mercedes–Benz of North America, Inc. v. Dickenson*, 720 S.W.2d 844, 848 (Tex.App.—Fort Worth 1986, no writ); *Valley Datsun v. Martinez*, 578 S.W.2d 485, 490 (Tex.Civ. App.—Corpus Christi 1979, no writ). Proof of the agreed contract purchase price between the parties, standing alone, is sufficient to support a finding that that was the

fair market value as warranted or promised by the seller. *Chrysler Corporation v. Schuenemann,* 618 S.W.2d 799, 805 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). *See also Jack Roach Ford v. De Urdanavia,* 659 S.W.2d 725, 729 (Tex.App.—Houston [14th Dist.] 1983, no writ); *Jack Criswell Lincoln–Mercury, Inc. v. Haith,* 590 S.W.2d 616, 619 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). These principles comport with Appellee's damage pleading in which he claimed the difference between "the value received by Plaintiff from the transaction and the consideration paid to Defendants...."

On the actual market-value-received side of the equation, the record presents the testimony of Appellee's computer expert, James Wright. Wright evaluated both the hardware and the software program provided by the Appellants. He concluded that the system flaws were in the software programming. It intermittently (and unpredictably) produced an "access manager error" message which denied access to the stored data. It also corrupted data entered into the system, repeatedly printed out "garbage" or "trash" (apparently machine language) upon attempted data retrieval, and erroneously intertransposed portions of different files. The flaws were not in the hardware, power supply fluctuation, disc damage or keyboard entry. Formal or further training of Appellee's data entry employees, under the contract package, would not have avoided the malfunctions since the appearance of machine language as garbage or trash on the display could neither be produced nor avoided by use of the keyboard. Upon receiving complaints from Appellee, Appellants suggested he engage in more frequent back-up of data entries and provided a "transport program" to retrieve data from corrupted storage discs. Wright testified that this did not amount to "debugging" the program, finding and eliminating the flaws. It simply provided a more time-consuming method for preserving the stored data, compensating for the continuing program flaws whenever they manifested themselves.

Wright concluded that the program, with the "bugs" intact, was not ready for marketing or sale. This is another way of saying it had no market value. He repeatedly responded to both counsel that, as it stood, the program had virtually no worth in terms of market value. This was clearly sufficient to satisfy the legal sufficiency of the evidence standard with regard to a zero valuation of the package delivered by the Appellants.

Appellants sought to refute Wright's zero valuation by attempting to suggest that some worth was reflected in the percentage of computer time not afflicted by manifestation of the programming flaws and by indicating the numerical instances of malfunction per day or per week. Wright reasonably explained that these percentage or number figures could not be directly translated into a percentage of the contract price, representing some market value delivered. Even if the system only malfunctioned three times a week or was about 93 percent "accurate," the program still had no market value because:

(1) The *occurrence* of malfunctions was unpredictable;

(2) The manifestations of malfunction were not always contemporaneously revealed;

(3) The length of time devoted to correction, saving and special retrieval was dependent upon the timing of the malfunction and its discovery in the framework of scheduled back-ups.

Wright's explanation of his zero valuation and his rebuttal of the defense evidence of some worth was sufficient to support the fact finder's conclusion against the factual sufficiency of the evidence standard of review. The court's determination that the delivered package had no market value was not so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *Cain,* 709 S.W.2d at 176.

Further support for the conclusion may be found in the testimony of Appellee himself. Appellee testified that the system was worthless to him. Appellants correctly asserted to the judge that personal

worth does not necessarily equate to market value. In this case, however, Appellee's statement that the system had no value to him should be evaluated in light of Wright's testimony concerning the difference between horizontal market items and their market value and vertical market items and their value. The horizontal market involves generic programs useful in a variety of business applications, such as a word processing program. A vertical market item involves custom programming for a particular business usage, with no general market application. In this case, the issue was the valuation of a vertical market program, in which there is logically a greater congruity or correlation between the personal value to the customer and the product's "market" value. In any event, there was ample evidence to support the trial court's conclusion that the system had no market value as delivered to Appellee.

Apart from the general valuation of the software program, Appellants contest the zero valuation with regard to five other components of the package sold to Appellee. The perpetual license to use the program in four counties and the non-competition clause were logically found to have no market value as a consequence of the zero valuation of the software program itself. A perpetual license to use something of no market value is in itself of no value. Similarly, there is no market value in being free from competition in the use of a worthless system, particularly when the potential competitors are being prevented from using the same worthless system. The package provision for Appellants to train eight employees of Appellee is of no market value if they are being trained to input and retrieve data from an unreliable, valueless system. According to Wright's testimony, their formal training would not have prevented the programming "bugs" to manifest themselves. Four months of data input from Winkler County land records was of no value when the confidence in the system (data corruption, loss of data, mistransposition of information) was so undermined as to render the resulting product unmarketable to the public. The programming flaws necessitated addi-

tional costs in time and labor in retrieval, reentry and costs of cover. Finally, the package provided one year of updates and enhancements to the software program. Without elimination of the programming flaws, such enhancements were of no benefit. Updates and enhancements in the form of "debugging" should have been accomplished at the time of the initial marketing and sale to Appellee.

The other half of the damage equation concerns the expense incurred by the Appellee. Appellants challenge the "stipulation" referred to in Finding of Fact 19, providing for payments of $39,939.00. Nonetheless, the record amply supports this calculation. Appellee paid $16,500.00 for the program license for Winkler County, and $9,000.00 in installments for the licensing in three other counties. He paid an additional $12,000.00 for data input by Appellants in Winkler County. While this expense arose under a separate contract, the expense may be viewed as consequential actual damages under the breach of the package contract. These three items alone amount to $37,500.00. Appellee suffered additional expense in lost personnel time and contract labor expense attempting to utilize the Appellants' system. Another method of arriving at the actual damage award is found in Plaintiff's Exhibit No. Four, a letter from Appellants' counsel introduced as a stipulation without objection, which set out the payments received from Appellee. The software payments total $24,939.00 and the labor payments $15,000.00, for a total of $39,939.00. Hardware expenses were not included in the damage award. This side of the equation finds ample support in the evidence. Points of Error Nos. One, Two and Three are overruled.

■ Point of Error No. Four asserts no evidence or insufficient evidence of misrepresentations by Appellants that were a producing cause of Appellee's damages. Appellants' evidence consisted of the relatively brief testimony of Linda Lillard. She simply denied any representation to Appellee that the system was "user friendly" or "bug free." At the time of trial, she was

engaged in a computerized title abstract business utilizing Appellants' software. She admitted, however, that it is a later version of the program sold to Appellee. Her business does not presently rely upon a "transport program" to save data from programming flaws. She admitted that under prior versions, they did have to utilize the "transport program" offered to Appellee following his complaints.

As a matter of fact finder credibility assessment, the trial court was free to reject Lillard's denials and accept the testimony of Appellee in this regard. Appellee stated that he was verbally assured that the system would be "user friendly," i.e. fully operable by personnel not highly trained in computers or computer programming, with instructions and display messages readily understandable to lay persons. He further stated that he was verbally assured that the system was bug free and was assured in the contract itself that the "equipment and Program are fully functional and operational at the time of installation, and are capable of performing the various functions necessary to develop and operate an abstract plant and title company." Appellee testified that in his discussion with Appellants as to operational capability, speed and accuracy of title data retrieval were emphasized as essential. Appellee testified that but for the foregoing assurances, he would not have entered the contract.

The breach of the described assurances is reflected in the user testimony of Appellee and the expert testimony of James Wright. Appellee testified that in response to one of his complaints, Linda Lillard admitted that the problem was in programming and was in part due to the fact that the program language was not fully compatible with the computer DOS (Disk Operating System) being used by Appellee. Both components were selected in advance by the Appellants. Wright testified that the system could not be characterized as "user friendly." Lillard, while denying making a "user friendly" assurance, testified that she dislikes and avoids use of such phrase. She did testify that the program sold to Appellee is "not the most forgiving one I have ever seen...." There

was sufficient evidence for the court to conclude that false representations were made as alleged and testified to by Appellee and that these misrepresentations induced his entry into the contract which naturally led to the actual damages addressed above. Point of Error No. Four is overruled.

■ Point of Error No. Five asserts error in entry of judgment for the Appellee because his claims were barred by acceptance of the goods and services without giving Appellants notice of breach by imperfect, nonconforming tender and affording them an opportunity to cure the deficiency. See Tex.Bus. & Com.Code Ann. § 2.607 (Vernon 1968). As with the set-off issue discussed above, this complaint presents an affirmative defense which must be raised by the answer under Rule 94, or tried by consent and ruled upon by the court under Rules 66 and 67. These requirements were not met in this case. *Mobile Housing, Inc. v. Stone*, 490 S.W.2d 611, 615–616 (Tex.Civ.App.—Dallas 1973, no writ); *Young v. J.F. Zimmerman & Sons, Inc.*, 434 S.W.2d 926, 927 (Tex.Civ. App.—Waco 1968, writ dism'd). Furthermore, as an affirmative defense, the burden of proof on this issue was upon the Appellants. The record fails to demonstrate a satisfaction of that burden to any degree undermining the verity of the trial court's judgment. Appellee did complain to the Appellants, although the frequency and timing was disputed. Appellants' only response was to provide the "transport program" to help retrieve salvageable data from corrupted files. Wright described the difference between this response and an actual *cure* of the programming flaws. Point of Error No. Five is overruled.

Point of Error No. Six complains of the award of attorney's fees and was contingent upon the success of one or more of the preceding points. Appellants' efforts failing in that regard, Point of Error No. Six is overruled.

Judgment of the trial court is affirmed.