**46933, INC., et al., Appellants,**

v.

**Z & B ENTERPRISES, INC., et al., Appellees.**

**No. 07–94–0133–CV.**

Court of Appeals of Texas, Amarillo.

May 30, 1995.

Rehearing Overruled June 26, 1995.

Carr Fouts Hunt Craig Terrill & Wolfe L.L.P., Donald M. Hunt, Lubbock, John E. Rapier, Allen, for appellants.

Moseley & Standerfer, P.C., Gregory P. Standerfer and Tom C. Clark, Dallas, for appellees.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

REYNOLDS, Chief Justice.

This appeal was perfected by 46933, Inc., Joseph Zinser, and Norwood Band from a final declaratory judgment incorporating a summary judgment, the effect of which denied all relief to the corporation and declared that Z & B Enterprises, Inc., North Texas Aero, Inc., William Rucker, and Zena Rucker, properly received and retained escrow funds, and awarded the Ruckers recovery of attorney's fees from 46933, Inc., Zinser, and Band. By four points of error, the corporation attacks the propriety of the judgment. For the reasons expressed, the points will be overruled and the judgment will be affirmed.

Zinser is president, and Band is vice-president, of 46933, Inc., referred to collectively as the corporation and individually by surname. The Ruckers own all of the issued shares of stock of Z & B Enterprises, Inc. and North Texas Aero, Inc., and are referred to collectively as the Ruckers.

On 26 February 1993, the Ruckers, as sellers, and the corporation, as purchaser, executed three agreements. The first was for the purchase of six aircraft from Z & B Enterprises, Inc. for $230,000; the second was for the purchase of listed assets of North Texas Aero, Inc. for $70,000; and the third was an escrow agreement for the deposit of $30,000 with Daniel W. Schreimann, P.C., the escrow agent.

After setting forth the purchase price of the aircraft in the first agreement, the parties agreed to the escrow of a portion of the price as follows:

2.02 *Form of Purchase Price.* The Purchase Price shall be paid by Purchaser to Seller as follows:

(a) The sum of Twenty Thousand and No/100 ($20,000.00) on execution of this Agreement as earnest money. If the transaction contemplated hereby is consummated in accordance with the terms and provisions hereof, the earnest money shall be credited against the Purchase Price at Closing. If the transaction is not so consummated, for any reason other than non-approval of the Purchaser's Small Business Administration ("SBA") loan, the earnest money shall be retained by Seller as liquidated damages and not as penalty, in full satisfaction of claims against Purchaser hereunder. If the transaction is not so consummated because the SBA fails to approve Purchaser's loan application, Seven Hundred Fifty Dollars and No/100 ($750.00) of the earnest money shall be retained by Seller as liquidated damages and the balance of the earnest money shall be distributed to Purchaser pursuant to the terms of the Escrow Agreement of even date herewith executed by Purchaser and Seller . . . .

The second agreement contained the same provisions for the escrow of $10,000 of the purchase price of the listed assets.

Incorporating the provisions of the purchase agreements, the escrow agreement provided for the disbursements of escrow funds under the agreement as follows:

(a) Funds shall be disbursed to each party herein in amounts as specified in the Escrow Agreement and Contracts.

(b) Funds held pursuant to the Escrow Agreement shall be disbursed on or before May 15, 1993 as follows:

(i) Upon closing of the transaction contemplated by the Contracts in accordance with the terms and provisions thereof on or before May 15, 1993, the Funds shall be credited against the Purchaser Price set forth in each Contract.

(ii) In the event the Purchaser fails to complete the transactions contemplated by the Contracts for any reason on or before May 15, 1993 (unless time of performance is extended by Seller) other than non-approval by the Small Business Administration ("SBA") for Purchaser's loan application. Seller shall be entitled to receive the entire amount of Funds on deposit with the Escrow Agent, less Escrow Agent's fees.

(iii) In the event the Purchaser fails to complete the transaction contemplated by the Contracts because the SBA denies Purchaser's loan application, then One Thousand Five Hundred Dollars and No/100 ($1,500.00) shall be retained

by Seller and distributed by Escrow Agent to Seller and the balance of the Escrow Funds, less Escrow Agent's fees, shall be distributed to Purchaser.

The corporation concedes that it made no application to the SBA for guaranteed loan approval. Despite the corporation's notice to Schreimann prior to the date scheduled for completion of the transaction that its performance would not be possible, and its request for the return of the escrow funds, Schreimann released the escrow funds, less his fees, to the Ruckers, who made demand for the funds. Resultantly, the corporation disputed the propriety of Schreimann's performance under the escrow agreement and the Ruckers' retention of the funds. No settlement was achieved.

Seeking a declaratory judgment of their rights under the escrow agreement to receive and retain the funds, the Ruckers brought an action against the corporation. Alleging that, with respect to their authority to bring suit, "all conditions precedent have occurred or been performed," and that the corporation had not performed, the Ruckers also sought specific performance of the purchase agreements by the corporation, damages for the corporation's breach of the contracts, and recovery of attorney's fees as allowed by chapters 37 and 38 of the Texas Civil Practice and Remedies Code.

Although Daniel W. Schreimann, individually, and Daniel W. Schreimann, P.C., were added as defendants by the Ruckers' amended petition, the amended petition contains no allegation of wrong-doing by Schreimann individually or in his capacity as escrow agent. In this regard, the Ruckers' statement that the dispute regarding disbursement was between them and Schreimann is unsupported. Indeed, Schreimann released the funds to the Ruckers as requested, less his fee, and they neither complain of the amount of fees retained, nor question Schreimann's performance under the escrow agreement.

The record does not reveal an answer by Schreimann, nor any appearance by him individually or in his capacity as escrow agent. He is not a party to this appeal.

By its live trial pleadings, the corporation, generally denying all of the Ruckers' allegations, countered with the specific defense of the Ruckers' breach of a condition precedent which rendered its performance impossible. Stated as affirmative defenses, the corporation pleaded (1) failure of consideration, (2) fraud in the inception, (3) fraud in the execution, (4) illegality, (5) that "the individual Defendants are not liable in the capacity in which they are sued," and (6) they did not execute a contract with Dallas County specified as venue.

Also seeking a declaration of its rights under the three agreements collectively, and recovery of attorney's fees, the corporation sought to establish that the purchase agreements were vitiated by either the Ruckers' fraud or their breach of the contract provisions. Alleging it made reasonable efforts to obtain financing guaranteed by the SBA but, during the process, learned the Ruckers misrepresented the conditions and values of some of the items, the corporation contended that the misrepresentations rendered any efforts to obtain financing futile. The corporation expressed the belief that, given the misinformation provided by the Ruckers, the SBA would not approve its application.

The Ruckers moved for summary judgment and marshalled support therefor from (1) the stated terms for disbursement under the escrow agreement, (2) the undisputed failure of the corporation to meet the conditions precedent to its entitlement to the funds under the escrow agreement, and (3) the affidavit of Zena Rucker. Further, they requested recovery of their attorney's fees and offered the supporting affidavit of their attorney, Gregory P. Standerfer.

By their motion, the Ruckers contended the corporation failed to meet the condition precedent under the escrow agreement because it did not seek approval of a guaranteed loan from the SBA. They further contended that each of the corporation's affirmative defenses was without merit, and they were entitled to summary judgment as a matter of law.

In response, the corporation presented, among other things, that the term "non-approval" as used in the three agreements was ambiguous; therefore, its usage must be

construed against the drafter, *i.e.*, Schreimann, acting as the Ruckers' attorney. The corporation maintained, and they maintain on appeal, that the proper interpretation required only that "approval *not* occur"; thus, since it made no request for approval, approval did not occur and the condition was met. And, since the failure of the corporation to apply to the SBA for a loan guarantee was due to the Ruckers' breach of contract by their misrepresentations, they could not complain. Contrary to the Ruckers' assertion that Zena Rucker's affidavit remained uncontroverted, the corporation offered Zinser's affidavit by which he specifically disputed several of Zena's averments, specifically that he made statements attributed to him that the SBA process involved "too much paperwork," was just "too slow," and they were "not going to go that route."

Despite the corporation's request for additional time to file evidence in support of its response, the hearing on the Ruckers' motion for summary judgment proceeded as scheduled. The order granting the summary judgment recited that (1) the Ruckers properly received, and should retain, the escrow funds; (2) Schreimann properly delivered the funds to the Ruckers; (3) the Ruckers did not breach the agreements; (4) Schreimann did not breach the agreements; and (5) the corporation take nothing by its countersuit. By the order, the Ruckers were awarded recovery of their attorney's fees from 46933, Inc., Zinser, and Band.

The summary judgment was reaffirmed and ratified by the later rendered final judgment. The judgment contained declarations that any indemnity agreement between the Ruckers and Schreimann was void and unenforceable, and that Schreimann breached a fiduciary duty owed to the corporation. Although the corporation was not awarded any recovery for Schreimann's breach, the Ruckers were awarded recovery of their attorneys' fees against him. The judgment further denied the corporation's cross-claim and all relief requested which was not granted.

By a motion for new trial, the corporation protested that more time should have been granted to obtain the deposition testimony of key witnesses. Yet, even without those de-positions, the corporation posited that the record showed genuine issues of material fact existed to vitiate the summary judgment, because Zinser's affidavit controverted that of Zena Rucker, and the Ruckers did not meet the conditions precedent to invoke the corporation's obligation to seek the SBA's approval. The corporation further asserted that the term "non-approval" could reasonably have more than one meaning. Finally, Zinser and Band contended there was a lack of evidence to support that portion of the judgment decreeing their individual liability for attorney's fees.

Further, the corporation stated, without argument, that after the summary judgment was granted, it learned the SBA's policies and procedures "prohibit direct applications over $150,000." However, by his supporting affidavit, Jeffrey L. Carpp, vice-president of commercial loans at BankTEXAS, averred, "[b]ecause the proposed loan was in excess of $150,000, ... the corporation ... could [not] file a direct application with the SBA without a waiver from the Regional Administrator of the SBA." Finally, the corporation submitted that Schreimann should have been required to restore the escrow account to the status quo prior to his breach of fiduciary duty. The trial court denied the motion for new trial.

By four points of error, the corporation contends (1) the agreements were ambiguous as a matter of law, (2) questions of fact exist which vitiate the summary judgment, (3) the declaratory judgment did not construe the agreements of the parties, and (4) no evidence exists to support the award of recovery of attorney's fees against Zinser and Band individually. We will address each point seriatim.

The corporation's initial contention is that the term "non-approval," as used in the purchase agreements and the escrow agreement, is ambiguous. Expressing that the agreements did not define the manner in which "non-approval" by the SBA was to occur, the corporation asserts the prefix "non" should be afforded its common meaning, *i.e.*, requiring only an absence of approval. Thus, the corporation disputes the Ruckers' interpretation that the terms of the es-

crow agreement provided for a condition precedent of application to, and an overt denial by, the SBA. The corporation adds that the agreements are further ambiguous as a matter of law because they do not address the manner in which a failure to approve or non-approval is to occur.

■ As the corporation observes, the trial court did not make an express finding that the contracts were unambiguous. Nevertheless, the finding is implicit in the decision it rendered. *Cf. Exxon Corp. v. West Texas Gathering Co.,* 868 S.W.2d 299, 302 (Tex. 1993) (holding that the trial court's determination as to ambiguity is implicit in its decision to submit the question to the trier of fact or to interpret the contract as a matter of law).

■ Mere disagreement over the meaning of a provision in the contract does not make the terms ambiguous. *Richardson Lifestyle Ass'n v. Houston,* 853 S.W.2d 796, 800 (Tex.App.—Dallas 1993, writ denied). Only where a contract is first found to be ambiguous may we consider the parties' interpretation. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 732 (Tex.1981). Where the meaning is plain and unambiguous, a party's construction is immaterial, *id.,* and the contract is construed as a matter of law. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951).

■ A writing is ambiguous only when, after application of pertinent rules of interpretation, the face of the writing indicates genuine uncertainty as to which meaning of its term is proper. *Skelly Oil Company v. Archer,* 163 Tex. 336, 356 S.W.2d 774, 778 (1962); *Snyder v. Eanes Independent School Dist.,* 860 S.W.2d 692, 696 (Tex.App.—Austin 1993, writ denied). The meaning shall be given as will carry out and effectuate, to the fullest extent, the parties' intentions, *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983), and give each part of the contract effect, leaving no provision meaningless. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994).

■ Reading, as we must, the terms of the purchase agreements and the escrow agreement together, *Luckel v. White,* 819 S.W.2d 459, 462 (Tex.1991); *First Nat. Bank of*

*Amarillo v. Jarnigan,* 794 S.W.2d 54, 59 (Tex.App.—Amarillo 1990, writ denied), we note that the terms "non-approval," "fails to approve," and "denies," describe the same occurrence. Consequently, the plain grammatical meaning of the three terms read en masse is to be afforded the single term "non-approval." *See Texas Dept. of Health v. Texas Health Ent.,* 871 S.W.2d 498, 502 (Tex. App.—Dallas 1993, writ denied).

■ In discharging our adjudicative function to determine which meaning gives effect to the parties' intentions as expressed in the contract, *KMI Continental Off. Prod. v. ACF Petro.,* 746 S.W.2d 238, 241 (Tex.App.—Houston [1st Dist.] 1987, writ denied), great, if not controlling, weight should be given to the interpretation placed upon a contract by the parties themselves as exhibited by their actions. *Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979). This obtains because the parties are in the best position to know what was intended by the language they employed. *James Stewart & Co. v. Law,* 149 Tex. 392, 233 S.W.2d 558, 561 (1950).

The purchase agreements provided consequences for failure of the transaction's "consummat[ion]" (1) for "any reason other than non-approval," and (2) because the SBA "fails to approve" the corporation's loan application. Similarly, the escrow agreement provided consequences for failure of the transaction's "complet[ion]" (1) for "any reason ... other than non-approval," and (2) because the "SBA denies" the loan application. It is unchallenged that, as used in the agreements, the terms "consummated" and "completed" refer to the same event. Similarly, a logical reading of the agreements reveals that the term "non-approval" is referenced to the same event as are the terms "fail[ure] to approve" and the "deni[al]" of the application.

The corporation, in its own words, "made reasonable efforts to obtain financing as contemplated by the two Agreements." Within the contemplation of the agreements was the SBA's approval of the corporation's loan. The SBA's approval could be secured only by making application for its approval. Thus, although it did not ultimately seek the ap-

proval, the corporation's actions evinced its understanding that the language of the agreements provided that approval or non-approval by the SBA was a condition precedent to disbursement of the escrow funds.

Then, by application of the stated rules of construction to the agreements, we agree with the trial court that they are certain in meaning and not ambiguous. The first point of error is overruled.

■ By its second point of error, the corporation contends questions of fact exist which vitiate the summary judgment incorporated into the underlying final judgment. The questions advanced concern the corporation's affirmative defenses of fraud and illegality based upon the events leading the corporation to believe that obtaining financing from the SBA would be impossible or highly improbable. Those events are the Ruckers' alleged misrepresentations, the corporation's resulting decision not to apply to the SBA for a loan, and subsequent events validating its decision.

In a summary judgment proceeding, the burden of proof is on the movant to show that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). Once the movant has established a right to summary judgment on the issues presented to the trial court, the nonmovant assumes the burden to present issues which would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). The question on appeal is not whether the summary judgment proof raises a fact issue, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.1970).

The corporation asserts that a question of fact exists whether the Ruckers breached the contract terms precedent to its obligation to file the application. The seventh section of the purchase agreements entitled "Conditions Precedent to Purchaser's Obligations," upon which the corporation relies to establish the Ruckers' negating breach, reads, in part:

Purchaser's obligation to perform and complete the transactions provided for herein shall be subject to Seller performing, on or before the Closing Date, all acts required of him, and shall be further subject to the material accuracy and correctness of the representations and warranties of Seller contained herein. . . .

The agreements further provide under section eight that:

All statements of fact contained in any memorandum, certificate, instrument, or other document delivered by or on behalf of Seller for information or reliance pursuant to this Agreement shall be deemed representations and warranties by Seller under this Agreement. . . .

Zinser averred that the facts contained in the Ruckers' financial documents were not accurate and such inaccuracies were determinative of the corporation's decision not to seek the SBA's loan approval. Thus, the corporation contends, there is a question of fact whether the Ruckers breached the condition of providing accurate information and relieved it of any obligation to apply to the SBA for a loan guarantee.

■ Not every breach of contract rises to the level of an affirmative defense. In order for a breach to constitute a bar to the other party's right to recover, it must be a breach of a mutually dependent covenant. *Hanks v. GAB Business Services, Inc.*, 644 S.W.2d 707, 708 (Tex.1982).

■ Whether mutual promises are independent or dependent must be determined by the parties' intent as evidenced by the language of the contract. In case of doubt, the court will presume that such promises are dependent rather than independent, since such construction ordinarily prevents one party from having benefit of his contract without performing his own obligation. *Nutt v. Members Mutual Insurance Company*, 474 S.W.2d 575, 577–78 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.). A dependent promise is one which goes to the entire consideration of a contract. It is a promise that is conditional upon the prior performance by

the other party. *See Greenstein v. Simpson,* 660 S.W.2d 155, 160 (Tex.App.—Waco 1983, writ ref'd n.r.e.).

A reading of the terms of the purchase agreements and the escrow agreement in unity, *Luckel v. White,* 819 S.W.2d at 462; *First Nat. Bank of Amarillo v. Jarnigan,* 794 S.W.2d at 59, reveals nothing to indicate that the condition of the corporation's application for approval by the SBA was dependent upon the accuracy of the representations and warranties provided for under sections seven and eight. Rather, the representations and warranties were a part of the consideration of the transactions and, because a breach of them could be compensated in damages, they were independent promises. *Hanks v. GAB Business Services, Inc.,* 644 S.W.2d at 708.

Under both the purchase agreements and the escrow agreement, the corporation's recovery of escrow funds was conditioned solely upon its application to the SBA for approval. By the terms of the agreements, it was the corporation's duty and responsibility to apply for the loan upon the terms stated in the contract, and its failure to seek the SBA's approval precluded its recovery under the escrow agreement. *Smith v. Evans,* 620 S.W.2d 627, 628 (Tex.Civ.App.—Dallas, 1981, no writ); *accord Herbage v. Snoddy,* 864 S.W.2d 695 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Breda v. Guardian Title Co.,* 559 S.W.2d 449 (Tex.Civ.App.—Waco 1977, no writ); *Huckleberry v. Wilson,* 284 S.W.2d 205 (Tex.Civ.App.—El Paso 1955, writ dism'd). Consequently, no question of fact regarding any breach by the Ruckers of their contractual representations and warranties vitiated the summary judgment for recovery under the escrow agreement. The second point of error is overruled.

By its third point of error, the corporation contends the judgment is defective, because the trial court did not declare the rights of the parties under the terms of the agreement in the judgment, but merely stated an end result. By the contention, the corporation merely attacks the form of the judgment. However, the corporation does not suggest, and the record does not reveal, that it called the defect now claimed to the attention of the trial court; instead, the record shows that the corporation's attorney specifically approved the form of the judgment as evidenced by his signature affixed thereto. Under these circumstances, the corporation waived any complaint of error to the form of the judgment. *Travis Heights Imp. Ass'n v. Small,* 662 S.W.2d 406, 414 (Tex.App.—Austin 1983, no writ).

Moreover, under the liberal construction which must be given the declaratory judgment act, *Hext v. Price,* 847 S.W.2d 408, 416 (Tex.App.—Amarillo 1993, no writ), no particular form is necessary for the declaration of rights in a declaratory judgment action if, when construed together with the pleadings and any findings, the rights of the parties can be determined from the face of the judgment. *Travis Heights Imp. Ass'n v. Small,* 662 S.W.2d at 412–13; *Downe v. Askey,* 529 S.W.2d 121, 124 (Tex.Civ.App.—Fort Worth 1975, no writ). The final judgment incorporates the previous summary judgment, by which the parties' contested rights to the escrow funds were determined as a matter of law. The judgment also contains declarations that the Ruckers' releases or indemnity agreements given to Schreimann, individually, and Schreimann, P.C., are void; that Schreimann, individually, and Schreimann, P.C., breached a fiduciary duty owed to the Ruckers, thereby entitling them to recover stated attorney's fees; that the corporation take nothing by its actions; and that all relief not granted is denied. In this form, the judgment permits the determination of the rights of the parties. The third point of error is overruled.

With its last point of error, the corporation contends the trial court erroneously awarded in its summary judgment the recovery of attorney's fees against Zinser and Band individually, because the counterclaim was brought solely in the name of 46933, Inc., and none of the agreements obligated Zinser and Band personally. The Ruckers make two responses.

First, the Ruckers reply that Zinser and Band are bound by the stipulation of recovery of attorney's fees. *Morgan v. Ebby Halliday Real Estate,* 873 S.W.2d 385, 390 (Tex.

App.—Fort Worth 1993, no writ). We disagree, for the corporation's attorney, as evinced by his handwritten notation directed to the stipulation stated in the summary judgment, agreed only to the amount of attorney's fees, not the recovery thereof.

 Second, the Ruckers answer that because, in the action for declaratory relief, Zinser and Band admitted personal interest in the escrow money and were affected by the declaration, assessment of their individual liability was not an abuse of discretion. TEX.CIV.PRAC. & REM.CODE ANN. § 37.006 (Vernon 1986). We agree that, under this record, the trial court cannot be charged with an abuse of discretion.

 Although Zinser and Band filed a sworn denial of liability in the individual capacity in which they were sued, they waived the denial by failing to obtain a ruling on the issue. *Integrated Title Data Systems v. Dulaney,* 800 S.W.2d 336, 339 (Tex.App.—El Paso 1990, no writ); *War–Pak, Inc. v. Rice,* 604 S.W.2d 498, 503 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). Without the ruling, the trial court had the discretion, in determining declaratory relief, to assess attorney's fees against any or all parties. TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986); *City of Schertz v. Parker,* 754 S.W.2d 336, 341 (Tex.App.—San Antonio 1988, no writ). Absent a clear showing of an abuse of discretion, which is lacking in the present instance, we cannot reverse the decision of the trial court. *Westfall Family Farms v. King Ranch,* 852 S.W.2d 587, 590 (Tex.App.—Dallas 1993, writ denied); *Trinity Universal v. Fidelity & Cas. Co.,* 837 S.W.2d 202, 205 (Tex.App.—Dallas 1992, no writ). The fourth point of error is overruled.

Accordingly, the judgment is affirmed.